# Staunton.

## VILWIG v. B. & O. RAILROAD COMPANY.

### October 2, 1884.

1. EQUITY JURISDICTION AND RELIEF—*Agents.*—Courts of equity have jurisdiction in matters of account involving the dealings of agents whenever it appears that a discovery is necessary, or there are mutual accounts between the parties, or the remedy at law is not plain, simple and free from difficulty. *Coffman* v. *Sangston,* 21 Gratt. 264.
2. IDEM—*Railroad Agents.*—Where agent occupies position of trust; is charged with duty not only of keeping, but of rendering regular accounts; and is custodian of most of the vouchers of his receipts and disbursements, the remedy at law is not so plain and easy as in equity, which is the appropriate forum for relief in such cases. *R. & P. R. R. Co.* v. *Kasey and als.,* 30 Gratt. 220.
3. RAILROAD AGENTS—*Application of Credits.*—Where such agent executes bond, January 13th, 1875, for faithful performance of his official duties in the future, and on January 30th, 1875, vouchers are passed to his credit for moneys by him paid out before said 13th, such credit must be applied to the agent's arrearages anterior to the execution of said bond.

Appeal from decree of circuit court of Frederick county rendered March 13th, 1884, in the chancery cause of the Baltimore and Ohio railroad company against B. H. Worthen and John Vilwig. The object of this suit was a discovery on oath from the company's agent, Worthen, of his receipts and credits; and an account, before a commissioner, of the amount due to the company from its said agent, for which John Vilwig was liable

as surety on Worthen's official bond, executed 13th January, 1875. Defendants demurred to and answered the complainant's bill, and several years after the suit was brought, filed a plea to the jurisdiction. Depositions were taken on both sides. At the hearing, the circuit court decreed that the company recover of the defendants the sum of $1,291.87, with interest and costs. From this decree John Vilwig appealed. Opinion states the case.

*Holmes Conrad,* for the appellant.

The bill prays for (1), discovery from Worthen; (2), an account before a commissioner.

The jurisdiction of the court of chancery depended then upon the necessity for a discovery and the propriety of an account.

[1.] Was a discovery needed, or was the bold averment of this bill a mere device to give this court jurisdiction?

Judge Story, in 1 Equity Jurisprudence, § 74, says: "If, therefore, the discovery is *not obtained,* or it is made on a mere pretense to give jurisdiction, it would be a gross abuse to entertain the suit in equity, when the whole foundation on which it rests is either disproved or it is shown to be a colorable disguise for the purpose of changing the forum of litigation."

This bill was filed in 1875, and it charged that there could be no settlement of the account without a discovery. The answer of Worthen was not filed until 1883, and it makes no discovery of any kind, and none has ever been made in the case. But the complainants, the railroad company, have, from the books and papers in their office, ascertained the amount claimed, and their accountant, Mr. R. B. White, shows in his deposition that he had ascertained the amount *before the bill here was filed,* and, indeed, that bill states the amount to the cent—$1,140.39—showing that the averment of the bill was untrue.

But that discovery was not needed appears from the very bond on which the demand is made.

The bond provides, "that in any action on their bond, or on any question however or whenever arising or contested, as to the amount of money received, paid over or due by the said B. M. Worthen * * * the books and papers of said company * * * and the instructions of the proper officers of the said company which may from time to time be given, shall be *prima facie* evidence of the matter therein contained against the said B. M. Worthen, agent as aforesaid, and against his sureties on this bond."

The books and papers from which alone this amount has been stated, required no proof, no discovery from the defendant to support them, but were, by the very terms of the bond, evidence of the facts.

But again, Judge Story says, 1 Equity Juris., § 74, "If the answer wholly denies the matter of fact of which discovery is sought by the bill, the latter must be dismissed, for the jurisdiction substantially fails by such a denial."

The answer of B. M. Worthen totally denies the allegations of the bill as to these matters. *Russell* v. *Clark*, 7 Cranch, 69.

The jurisdiction of the court of chancery could not be maintained then on the ground of discovery.

[2.] The demand for an *account* furnishes no stronger ground to support the jurisdiction of the court.

"It is not in every matter of account cognizable at law that the equitable jurisdiction will be exercised. The general rule being, that a proper case is presented when the remedies at law are inadequate." 2 Pomeroy Equity Juris., section 1420.

Here was a penal bond upon a condition that the obligor should faithfully account for the funds received by him, and that the books and papers of the railroad company should be evidence of the matter therein contained.

The answer of Worthen denies the charge of the bill that he had failed to account; and this charge of the bill is not sustained by any proof. The deposition of R. B. White, the accountant

of the company, with statement of the full account produced by him, shows that it was furnished altogether from the books of the company.

So that the right of the complainant was remediable at law appears—

(*a.*) The railroad company had all of the evidence of their claim in their own hands.

(*b.*) The production and proof of the items of their claim was not necessary, because dispensed with by the very terms of the bond.

(*c.*) The actual amount of this claim having thereby been accurately ascertained by the complainant from the proofs in his own hands, and that amount stated in his bill, no accounting with the defendant was needed to ascertain it again.

Where there has been an "account stated" between the parties no bill for an account will lie. (1 Daniel's Chancery Practice, 665.)

"It does not, however, seem to be necessary to aver that the account was settled upon a minute investigation of items, a general agreement or composition will be sufficient." (*Ibid,* 665–6.)

There the parties had taken the precaution, by a careful provision in the bond, to make the "books and papers in the office of the company", the arbiters of the amount. And let it be observed that every item of the account, as established by the commissioner here, was ascertained by Mr. White, the accountant of the company, from the "books and papers" of the company, without one particle of extraneous evidence.

*Second.* On the merits of the claim the decree is erroneous, and should be reversed.

The bill avers that a balance of $1,140.39 remains due and unpaid from the agent, B. H. Worthen.

(1.) It is insisted by the company that its books and papers show this amount to be due.

That Worthen did not make certain returns to the company, which might have accounted for this balance.

Worthen's answer denies this charge of the bill, and he insists that although the books and papers of the company are under the provision of the bond to be *prima facie of what appears in them*, they are not evidence of what does not appear, and he having denied by his answer the charge that he had failed to make return, by his deposition in the cause he proves that he did make the return, and there is no proof to the contrary, except the fact that the return does not appear in the company's office.

(2.) This bond was executed on the 13th *January*, 1875, and the liability of the surety, Vilwig, began then.

In stating the account against the agent, the first item is a balance against him on the business of *December*, 1874, of $2,492.97, and to this balance of 1874, is applied the money paid in by the agent to 30th *January*, 1875, of $1,104.15.

Now, while this may be all right as between the company and the *principal*, who was their agent, yet it is all wrong, so far as John Vilwig, the surety is concerned.

His undertaking was, that Worthen should faithfully account for all moneys received by him as agent after 13th *January*, 1875. If the company can apply the money paid by the agent, *after* that date, to liabilities of the agent, which had occurred *before* that date, they are just making the surety responsible for defaults for which he never bound himself, by depriving him of credits, to which he is entitled.

*Dandridge & Pendleton*, for the appellee.

HINTON, J., delivered the opinion of the court:

The bill charges that this company, a short time prior to January 13, 1875, appointed one B. H. Worthen its agent in Winchester; that the scope of his agency extended from Har-

per's Ferry to Strasburg, subject to subordinate agencies at certain intermediate points on the line of the road. That Worthen gave bond on the 13th January, 1875, with (the appellant) John Vilwig as his surety in the penalty of $3,000, conditioned for the faithful performance of his duties as such agent. That Worthen's agency terminated on the 10th March, 1875, and that there was then due to the company a sum "of not less than $1,140.39 with interest, &c., after allowing all credits." The bill also alleges that Worthen had received as agent of the company large amounts of money for which he had not accounted, and that no full settlement could be had with him until he should make a full disclosure on oath as to " the receipts and credits " during these periods. It then prays for a discovery, an account, and for general relief. In May, 1879, more than three years after the plaintiff had been required by the court to furnish the defendants with copies of all papers pertaining to the office of the agent at Winchester, during the period covered by the bond of Worthen and Vilwig, for the purpose of aiding them in making their answer, and more than two years after an account had been ordered, Vilwig filed an answer, which is not sustained by the proofs however, in which he reserves the right to demur to the bill. And in November, 1883, more than eight years after the filing of the bill, Worthen filed an answer in which he demurs to the bill, "pleads want of jurisdiction in the court," and denies that any discovery is needed from him or that he had at any time received any money as agent for which he had failed to render a full account.

Now, assuming for the purposes of the case, what is certainly not beyond dispute, that it was competent for the defendant to plead to the jurisdiction of the court at the time he did, and after he had submitted to its jurisdiction for so long a time, and in some instances invoked its powers, we proceed to consider the first error assigned upon this appeal, viz: The bill should have been dismissed for want of jurisdiction. The bill in this case, it will be observed, is not a technical bill of discovery, or, as it is

sometimes called, a pure bill of discovery, that is, a bill filed for the purpose of enforcing discovery in aid of proceedings before some other tribunal, but is a bill for discovery and relief; that is, it is a bill in equity calling for a discovery. In this sense, "every bill in equity" may properly be deemed a bill of discovery, since it seeks a disclosure from the defendant, on his oath, of the truth of the circumstances constituting the plaintiff's case, as propounded in his bill. 2 Story's Eq., § 1483. The bill in this case not being then the technical bill of discovery, the cause did not necessarily terminate with the failure to obtain the discovery, and it was competent for the court, the bill being for an account as well as a discovery, to go on and determine the matter of controversy, if an account was needed for a proper decision of the case. For, as courts of equity have jurisdiction in the case of trustee and *cestui que trust,* where the *cestui que trust* demands an account of moneys received under the trust under the general equity for enforcement of trusts, so "a corresponding equity exists as against an agent or steward, or a person in any similar character, who is bound by his office to render regular accounts. And if he fails to render such accounts, his employer will have an equity, arising out of the agent's failure of duty to have the accounts taken in the court of chancery, where the evidence may be supplied by discovery on oath." "This equity does not originate," says Adams, "in the mere want of discovery, which will not   *   *   confer a jurisdiction for relief, but in the additional ingredient, that such want has been caused by the defendant's fault." Adams' Eq., §§ 220–221.

In *Coffman* v. *Sangston,* 21 Gratt. 263, this court said: "The jurisdiction of courts of equity in matters of account involving the transactions and dealings of trustees and agents is now well established. Not that the bare relation of principal and agent justifies the interference of the court in every case, but whenever it appears that a discovery is necessary, or that there are mutual accounts between the parties, or the remedy at law is not plain,

simple and free from difficulty, the equitable jurisdiction attaches." *Zetelle* v. *Myers*, 19 Gratt. 62; *Segar* v. *Parrish*, 20 Gratt. 680; *Simmons* v. *Simmons' Adm'r*, 33 Gratt 451. Within this category the case in hand clearly falls. It is a case requiring an investigation of the complicated account of an agent occupying a position of confidence and trust, charged *virtute officii* with the duty not only of keeping but of rendering regular accounts, and who was the custodian of most, if not of all of the papers and vouchers which showed the receipts and disbursements of his agency. In such cases the remedy at law is not as plain or free from difficulty as it is in equity, and this is strikingly illustrated by the case of *Richmond & Petersburg R. R. Co.* v. *Kasey & als.*, 30 Gratt. 220, where, the action being covenant, both parties found it necessary to have the account taken before a commissioner. In view of what has been said, we cannot doubt that the court of equity properly had jurisdiction of the case.

The next and only other assignment of error is that the decree is erroneous because, as it is said, an item of $1,104.15 was improperly applied to the partial extinguishment of the balance due on the account of Worthen for the month of December, 1874, instead of being applied to the default occurring between the 13th January, 1875, the date of the execution of the bond and the termination of the agency. It is argued that as that sum was passed to the credit of the agent on the 30th January, 1875, it must be so applied as to that extent to exonerate Vilwig. This argument is founded upon the assumption that this amount was paid to the company in money on that day, and, therefore, during the period for which Vilwig was liable. This, however, is not the fact; for an inspection of the credits that make up that sum and of the agent's return to the company conclusively establishes that they consisted not of money, but of vouchers for moneys actually paid out by the agent before the bond was executed and before, therefore, there was any liability on Vilwig; and that these very vouchers were forwarded to the company

before the execution of the bond, although in accordance with the custom of the company they were not passed to the credit of the agent until they had been approved and at the end of the month. The supposition upon which the argument was rested being unfounded, the objection can be of no avail.

The decree of the circuit court is plainly right, and must be affirmed.

DECREE AFFIRMED.