# CHARLESTON.

HOTCHKISS *et al. v.* FITZGERALD PATENT PREPARED PLASTER
Co. *et al.*

Submitted June 24, 1895—Decided Nov. 30, 1895.

1. EQUITY—JURISDICTION.
   Where a court of equity has jurisdiction for one purpose, it
   should go on and decide the whole merits of the cause, and end
   the litigation between the parties upon the showing made, unless
   some good reason for not doing so is made to appear.

2. JURISDICTION—STATE COURTS—PATENT RIGHTS.
   The state courts have jurisdiction over questions arising out of

contracts made concerning patent rights, where the validity of the patent arises collaterally, and is not directly involved.

3. NEGOTIABLE INSTRUMENTS—COLLATERAL SECURITY—*Bona fide* HOLDER.

Where a negotiable instrument is transferred as collateral to secure a valid pre-existing debt, by being properly indorsed and delivered, or by delivery only when indorsed in blank or made payable to bearer, so that the transferee becomes a party to the instrument, and he takes the same before maturity, in good faith, and without notice of equities, he thereby becomes, without more, a holder for value, in the usual course of business.

VINSON & THOMPSON for appellants, cited Daniel Neg. Inst. § 826-831; 102 U. S. 25; Rob. Pat. § 855 *et seq.*; 23 W. Va. 253; Rob. Pat. § 863; 37 Fed. Rep. 92; 24 Blatch. 289; Rob. Pat. § 241, notes to § 243 and § 258; 5 Bann. and A. 53; 91 U. S. 151; 2 Blatch. 474, 194; 5 McLean, 44; 1 Wash. 168; 3 Bann. and A. 616; 6 Fisher, 575; 15 How. 330; 10 Blatch. 122; Rob. on Pat. § 195; 16 Ill. 214 and 207; 15 Am. St. Rep. 806; 1 Beach, Mod. Eq. Juris. p. 78, § 76 *et n*; 12 How. 57; 66 Ga. 250; Am. and Eng. Enc. Law, p. 84, 91; 32 Mich. 242; 17 Ill. 175; 11 Iowa, 198; 19 Brad. (Ill.) 375; Rob. Pat. § 1231; 14 W. Va. 28; 21 W. Va. 183; 26 W. Va. 64; 35 W. Va. 172; 16 Pet. 1; 20 How. 37, 3; 21 How. 430; 19 Wall. 166; 100 U. S. 239; 102 U. S. 14; 1 Blatch. 412; 10 Fed. Rep. 243; 3 Woods C. C. 316 and 325; 14 Cal. 94; 8 Ib. 266; 52 Ib. 611; 54 Ib. 107; 37 Conn. 205; 29 Ib. 475; 8 Ib. 505; 11 Ib. 388; 3 Ga. 47; 22 Ib. 246; 2 Kelly 106; 36 Ill. 490; 42 Ill. 18; 75 Ib. 354; 91 Ill. 20; 93 Ib. 215; 103 Ib. 562; 104 Ill. 491; 3 Bradw. 239; 1 Ind. 89; 5 Ib. 396; 24 Ib. 14; 80 Ib. 598; 26 La. Ann. 15; 40 Md. 540; 90 Mass. 303; 117 Mass. 290; 8 Met. 40; 3 Cush. 16; 1 Allen, 502; 2 Ib. 14; 6 Cush. 469; 13 Gray, 11; 132 Mass. 205; 21 N. J. L. 665; 36 Ib. 92; 5 R. I. 515; 7 R. I. 550; 11 Rich (S. C.) 657; 6 Lex. 515; 22 Gratt. 254.

SIMMS & ENSLOW for appellees cited 23 W. Va. 253; 10 How. (U. S.) 99; 106 U. S. 613; 99 U. S. 547; 6 Blatch. (U. S.) 356; 1 Holmes (U. S.) 317; 8 Blatch. (U. S.) 113; 24 Iowa, 231; 35 N. Y. 65; 17 Wis. 61; 70 Ala. 469; 41 Ark. 418: 5 Snead, 441; 26 Vt. 574; 16 W. Va. 117; 75 Ill. 170; 1 Dan'l Neg. Inst. 752.

HOLT, PRESIDENT:

On appeal taken by all parties to a decree entered on the 29th day of July, 1893, by the Circuit Court of Cabell county, dismissing plaintiffs' bill, and denying the defendants affirmative relief.

In the year 1888 two letters patent (Nos. 391,889 and 391,390) were granted by the United States to John H. Fitzgerald, a citizen of Frankford, state of West Virginia, for certain improved plastering compounds. By contract dated —— day of ——, Fitzgerald sold, assigned, and transferred said invention, for all the territory of the United States lying east of the Mississippi river, to the Fitzgerald Patent Prepared Plaster Company, a corporation existing as such at the city of Huntington, created by, and doing business under, the laws of the state of West Virginia. By contract dated the 23d day of February, 1991, the Fitzgerald Plaster Company bargained, sold, and conveyed unto the Grottoes Company, a corporation created by, and existing and doing business in, the state of West Virginia, to H. M. Bell, R. H. Catlett, Jed Hotchkiss, of Staunton, Va., and R. F. Dusenberry, of Huntington, W. Va., all their right, title, and interest in and to said two letters patent of the United States of America, numbered 391,889 and 391,390, granted to John H. Fitzgerald, of Greenbrier county, W. Va., for and in the state of Virginia, except the counties of Warwick and Norfolk, for and in consideration of the sum of five thousand dollars, for which the said Bell, Catlett, and Hotchkiss executed their note payable in four months. The contract further provided that the party of the first part should put up, build, and equip, on land at Shendon, Va., furnished by the party of the second part, a plant of 15-ton capacity, as set forth and described in the contract, for the sum of ten thousand dollars, to be paid as follows, *viz:* Two thousand dollars as soon as foundations are ready, and the sills are on the ground; two thousand dollars as soon as the roof is on; two thousand dollars as soon as the main line of shafting is in; three thousand dollars as soon as the factory is completed; one thousand dollars when it shall have been run for thirty days, and its capacity proven to be accord-

ing to the contract. The plant was completed, and started into the manufacture of this compound, in the early part of July, 1891. The purchasers formed a new corporation, under the name of Virginia Plastering Company, and transferred to it the plant, contract, and letters patent obtained from the Fitzgerald Company; and the company thus formed began its work of making and selling plaster late in July, 1891, and is still in operation, as far as this record shows. Dusenberry executed his note for five thousand dollars, part of the purchase money, and secured the same by deed of trust on certain real estate in Huntington. Upon the construction of the plant the Grottoes Company paid three thousand dollars, and the two thousand remains unpaid; also, the two notes of five thousand dollars.

Ten days after its execution one of these notes, *viz.* the one executed by Hotchkiss, Bell, and Catlett, was turned over to the First National Bank of Huntington, as collateral security for a debt of —— dollars due and owing by the Fitzgerald Co. to the bank, which was accepted as such. At the maturity of this note it was protested for non-payment, and is now held by the bank.

The other note, *viz.* the one executed by Dusenberry, was indorsed by the Fitzgerald Company to John H. Fitzgerald and A. W. Ludington in payment of a debt it owed to them. It was protested for non-payment, and is still owned by Fitzgerald and Ludington.

On the 6th day of November, 1891, the plaintiffs, the purchasers of the patents for the state of Virginia, filed their bill in the Circuit Court of Cabell county, charging that said contract and said notes were procured from them by the fraud of the Fitzgerald Company, and asking that said contract might be canceled, that the collection and transfer of these notes might be enjoined, and their return to the makers be directed.

To this bill the Fitzgerald Plaster Company filed its answer, denying all allegations of fraud, and asking to have the contract specifically enforced, and for a decree against the plaintiffs for the balance due.

The First National Bank and Fitzgerald and Ludington came into the suit by filing their respective petitions, and

each asked for a decree against the makers of their several respective notes.    The plaintiffs demurred to and answered the petition of the First National Bank, and R. F. Dusenberry filed his answer to the petition of Fitzgerald and Ludington.    The depositions of quite a number of witnesses were taken and filed, bearing on the various questions of fact put in issue by the pleadings.

By final decree entered on the 29th day of July, 1893, the court decided against the plaintiffs, and being of opinion that the plaintiffs were not entitled to the relief prayed for, dismissed their bill, with costs, and also decided that defendant and the First National Bank and Fitzgerald and Ludington were neither entitled to the relief prayed for, but without prejudice, and all parties appealed.

Does the case, as made by the pleadings and the proof, call for a decree of rescission?    Plaintiffs allege that the Fitzgerald Plaster Company induced plaintiffs to enter into the contract and give said notes by falsely and fraudulently representing to plaintiffs that they (defendants) had patents for the making of the plaster compound according to the formula of mixing the component parts which defendants gave them to use and to go by; that in truth the composition which the plaintiffs were induced to buy the right to manufacture was not patented, and that the factory agreed to be built was not completed; that the component substances and proportions in which they were to be used, and the method of mixing and making into the finished article, which were given to plaintiffs to use and go by, were covered by patent No. 456,297, dated 21st July, 1891, issued to Aaron Anthony, of Springfield, Ill., for improvements in plastering compositions.

The defendant answered denying all fraud generally, and each specific charge of fraud and deceit; alleging, that at the express request of the plaintiffs a formula for compounding was furnished them, in which two pint cups of chemicals were substituted for sugar and carbonate of soda mentioned in the patent, for the purpose of keeping outside persons from infringing upon their patent rights, and thus protect them from annoying litigation, and that the factory was completed and put in operation according to

contract under the superintendence and control of R. F
Dusenberry, one of the plaintiffs, was turned over to and
accepted by plaintiffs as completed according to the con-
tract on or about the 1st day of August, 1891, having been
built according to the plans and specifications of plaintiff
Dusenberry, who was upon the ground, and superintended
its construction throughout; that it is the owner of the An-
thony patent for an improvement in plastering compounds;
that it could have prevented the issuance of the An-
thony patent, but thought it best, in order to avoid trouble,
to let it issue, and buy, which was done.  And they tender
to plaintiffs, with their answer, the Anthony patent, to be
conveyed to them, for the same territory, on plaintiffs' pay-
ing the balance due the Fitzgerald plaster company, *viz.*
about two thousand dollars, and they pray for a dissolution
of the injunction, and a decree for the balance due them.

Plaintiff Dusenberry had worked in defendant's factory
in Huntington, and says in his testimony: "I knew that
the plaster we were making under the formula furnished
was a good plaster, and supposed it to be covered by a
patent.  What we made at Shendon was first rate."  And,
before the making of the contract, W. E. Parsons, the act-
ing agent on the part of the Fitzgerald Plaster Company,
exibited to him and his co-plaintiff's a sample of plaster
made under the formula given to plaintiffs, and used at
Huntington, and also exhibited one of their circulars. That,
he did not know that the formula given them was not cov-
ered by the Fitzgerald patent until he saw a copy of the
Anthony patent, which was almost identical with the form-
ula they were using.  That W. E. Parsons claimed that in
the contract they were to give plaintiffs the benefit of any
improvements, and, after this suit was brought, offered to
transfer to plaintiffs the right to manufacture under the
Anthony patent, but said it was merely an improvement
upon the Fitzgerald plaster.  That it did not amount to any-
thing at all.  That, if they had objected, Anthony could not
have obtained it.  The ingredients were the same, but used
in different proportions, which was necessary in order to
adapt it to the sand, lime, sawdust, and plaster of different
localities.  That the furnished formula and the patent form-

ula were, with such permissible change as was required for adaptability to locality, practically the same. In California the composition was almost identical with the patented formula, and the furnished formula was covered by the Anthony patent, which was tendered in September, 1891. No change in the proportion of ingredients, or in the order of their intermixture, can vary the character of the result, unless it summons into action, in the same ingredients, some new elemental force, or imposes on existing forces some new method of co-operation. 1 Rob. Pat. §§ 194, 195. The patent itself is *prima facie* evidence that it is valid. See 18 Am. & Eng. Enc. Law, p. 101, note 4. Its validity has never been called in question. These plaintiffs are enjoying the benefits of its supposed validity. They have nothing to say against the Anthony patent, the benefit of which they also have. Therefore they ought to pay the stipulated price they agreed to pay for their assignment and transfer. See *Edison Gen. Electric Co.* v. *Thackara Manuf'g Co.*, 167 Pa. St. 530 (31 Atl. 856). On this branch of the case there is no room for serious controversy.

As to the building of the factory, there is some conflict in the testimony as to whether it fulfills the requirements of the contract, but I think the weight of evidence tends to show that it was constructed as required by the contract, and was accepted; and that it failed to turn out the amount of plaster expected was due to the want of efficient and energetic running and management. Therefore the decree of the circuit court, so far as it goes, is right. But all parties complain that it did not go further. Its jurisdiction was not, and can not be successfully, called in question.

The bill sought to rescind a contract, and cancel the written evidence thereof; to enjoin the transfer, and require the surrender of the notes executed for the purchase money of the patent, on the ground of fraud in selling a right which was not covered by the patent, and the faulty construction of the factory. The court took jurisdiction of the case, and the right to do so in such a case can not be questioned. It is not questioned. The plaintiffs appeal because the court did not go on, and dispose of the ques tions involved to do complete justice, and avoid a multiplic-

ity of suits, by rescinding the contract according to the prayer of their bill. The defendants appeal because, after being put to the great trouble and expense of repelling the charges brought against them to the satisfaction of the court, they are dismissed empty handed, but with the privilege, if they think it worth the trouble and expense, the second time, of again making good their right to the balance of the purchase money at some other time, before some other tribunal.

A direct suit to repeal a patent can not, of course, be brought in a state court, but a state court has jurisdiction, as in this case, to rescind a contract for the sale of a patent right; and the fact that in the investigation the state court will be obliged to inquire collaterally into the validity of the patent, as a consideration of the sale thereof, can not deprive the state court of jurisdiction. *Merserole* v. *Union Paper Collar Co.*, 6 Blatchf. 356, Fed. Cas. No. 9,488; *Hunt* v. *Hoover*, 24 Iowa, 231; *Slemmer's Appeal*, 58 Pa. St. 155. See 18 Am. & Eng. Enc. Law, p. 70, notes; *Maurice* v. *Devol*, 23 W. Va. 247.

But the two *bona fide* indorsees for value of the two negotiable notes in controversy before they fell due were still more urgent for the court to go on; for, if they are right, they were entitled to be paid, no matter how the main controversy between the assignor and the assignees of the patents might be decided. But the bank took the note, which it presents and asks to be paid as a collateral to secure the payment of a pre-existent debt, not then due; and therefore, say counsel for the plaintiffs, the indorsee took it subject to all the equities between the parties, and *Whittaker* v. *Gas Co.* (1880)16 W. Va. 717, is cited as authority for the doctrine. But the point did not arise and was not decided in that case, as I read it; and, if it had been unadvisedly so held, it would be useless and unwise for any one state court to stand out against the clear and decided weight of authority upon a question of commercial law. See *Railroad Co.* v. *National Bank*, 102 U. S. 14; *Railroad Co.* v. *Burke*, 22 Gratt. 254. The maker has sent out a negotiable contract to pay the bearer or indorsee a certain sum. It has been acquired before maturity, for a valuable consideration, and

the burden of fixing the liability of the indorser, if any, is assumed. This alone is sufficient to make the *bona fide* taker of the instrument transferred as collateral security for a pre-existing debt a party to the instrument, as a holder for value, in the usual course of business. See 1 Daniel, Neg. Inst. § 831a. Public policy and general convenience require that such paper should be given, as much as may be, the efficiency of money. Fair dealing would seem to require that the indorsee should take the benefit of the transaction together with the burden, and he should not be made to suffer by the maker on account of the confidence which his own promise created. For a full discussion of the general subject from the standpoint of both reason and authority, see Id. § 824 *et seq.* He regards the true rule to be that the becoming a party to the instrument transferred as collateral for a pre-existing debt, in and of itself, protects the transferee, as a *bona fide* holder, and brings the transaction within "the usual course of business." See opinion of Bradley, J., in *Railroad Co.* v. *National Bank,* 102 U. S. 14 58, that it is also supported by the consideration of the obligation to pay or secure the pre-existing debt, being of the nature of a pledge or mortgage. Colebrooke, in his work on Collateral Securities (section 18, p. 20) lays down the rule as follows: "The pledgee of negotiable instruments properly indorsed and delivered, where indorsement is required, or by delivery only, where indorsed in blank, or made payable to bearer, so that he becomes a party thereto, receiving the same before maturity, in good faith, and without notice of equities, as collateral security for a valid antecedent debt, without more, is a holder for value, in the usual course of business." We might infer from what follows that in order to give the transaction this character, by furnishing the necessary valuable consideration, in addition to being charged with the responsibilities and liabilities of making proper demand, and of giving notice of non-payment on default, there must be a promise, express or implied, of delay in the enforcement of the original indebtedness, in order to furnish a valuable consideration to support such transfer, and bring it within the usual course of business. The doctrine seems

to be settled that the indorsee of a bill or note of a third party, taking it on account of a precedent debt, takes it, by implication, as a conditional payment; and the antecedent debt is not extinguished, but suspended until the bill or note in conditional payment has fallen due. See 1 Daniel, Neg. Inst. § 830. "But this implication only arises in cases where the latter is equal or greater in amount than the debt which it is given to secure." Id. § 831. So there may be other inconveniences of requiring such additional consideration of delay, which would be inconsistent with the commercial policy upon which the doctrine is founded. On the subject of what constitutes a holding for value, see *Swift* v. *Tyson*, 16 Pet. 1; Bigelow, Bills & N. p. 497.

The note for five thousand dollars which was executed by Dusenberry to the Fitzgerald Plaster Company for part of the purchase money was indorsed and delivered to J. H. Fitzgerald, the president of the company, and Ludington, one of the directors. They took it *bona fide*, for a valuable consideration, in the ordinary course of business, when it was not overdue, and without any actual notice of the facts which plaintiffs allege to impeach its validity as between them and the Fitzgerald Plaster Company. Does the law in such a case impute to them such notice, solely by reason of their official relation to the corporation which is claimed to have procured the note by fraud? No authority to that effect has been cited or produced. It is not claimed that either of them had anything to do personally with negotiating the sale, or notice or knowledge of what was said and done by W. E. Parsons, the active manager who brought it about. Both were absent from the scene of action, Fitzgerald being at the time on the Pacific coast, busy with other matters of his company. The company is solvent, and no question as to its being good for its debts is raised. The relation these officers hold to the corporation may furnish one fact in a set of circumstances from which the inference of notice, as one of fact, may be drawn; but I know of no rule which imputes notice, as matter of law, in all cases, from the existence of the official relation alone.

But the question is not material, in the view we have taken of the case, as we concur with the circuit court, af-

ter the thorough investigation of the question that was gone into on both sides, that the contract was not procured by fraud on the part of the defendant company or its agents, that they have shown no ground to rescind the contract, and have shown none, as we think, to withhold the payment of the balance of the purchase money.

The court had jurisdiction for the purpose of rescission as prayed for by plaintiffs. Nothing apears in this record why the court could not have gone on and decreed specific performance as prayed for by the defendants and the petitioners. In such a case a court of equity, having jurisdiction for one purpose, will go on and dispose of the whole merits of the cause, and of all the questions involved, to avoid a multiplicity of suits. See *Hanly* v. *Watterson*, 39 W. Va. 214 (19 S. E. 536); *Yates* v. *Stuart's Adm'r* 39 W. 124 (19 S. E. 423); *Hall* v. *Wilkinson*, 35 W. Va. 167 (12 S. E. 1118); *Handy* v. *Scott*, 26 W. Va. 710; *Little* v. *Cozad*, 21 W. Va. 183; *Mitchell* v. *Chancellor*, 14 W. Va. 28.

The present tendency of courts of equity, where no insuperable obstacle intervenes, is to end the litigation between the parties, once for all, upon the showing made, and not send them to other forums, to be burdened with the expense and harassed with the uncertainties and delays of other suits about the same matter. The court should enter a decree for the respective petitioners on the two negotiable notes, and for the defendant company for the balance due it on the contract of sale.

The decree complained of is affirmed in so far that it holds that plaintiffs are not entitled to a rescission of the contract, and not entitled to the other relief prayed for; but in other respects said decree is set aside, and the cause is remanded, with directions to proceed with it as herein indicated.