# CHARLESTON.

THOMPSON *et al. v.* WHITAKER IRON CO. *et al.*

Submitted September 9, 1895—Decided  Dec. 11, 1895.

1. EQUITY JURISDICTION—BAILMENT.
   Bailment is not such a trust as gives a  court of equity jurisdiction.

2. EQUITY JURISDICTION—BILL OF DISCOVERY.
   A pure bill of  discovery  need  not state that discovery is indispensable to  sustain  the plaintiff's  proceeding in  another court, nor that  he  has  no  other  evidence, nor is  it objectionable that the bill shows he has other evidence ; but a bill for discovery  and relief on a  demand not cognizable  in equity, the only  ground of jurisdiction  being the need of discovery, must state that discovery is indispensable for want of other  evidence ; and if it  appear from the bill or on  proof  that  the  plaintiff has  other  adequate evidence, the bill will be  dismissed on  demurrer or hearing.   It is otherwise where the demand is itself proper for a court of equity.

3. EQUITY JURISDICTION—CAUSE OF ACTION.
   Averments showing equitable jurisdiction, but  shown by other matter of the bill  and  its manifest cast  and  objects to be merely colorable for jurisdiction, will not give  equity  jurisdiction, if the real cause of  action  is one for which he  has  adequate  remedy at law.

4. EQUITY JURISDICTION—BILL OF DISCOVERY.
   The fact that statute  has made  adversary parties witnesses for each other at law does not oust  equity of jurisdiction for  discovery.

5. STATUTE OF LIMITATIONS—DEMURRER—LACHES.
   The defenses of the statute  of limitations and  *laches* and stale demand may be made by demurrer.

6. STATUTE OF LIMITATIONS—DEMAND—REASONABLE TIME.
   If a demand be necessary  before suit, the  period of  limitation under statutes of limitation does not start until demand.   But demand must be made  within reasonable time, which  is the term fixed by the statute of limitation, if not made before.   Where no demand is shown it will be presumed as made within that period, and the statute will then run.

7. STATUTE OF LIMITATIONS—CAUSE OF ACTION—FRAUD.
   Where a cause of  action  arises  out of a  fraud, the  statute  of

limitation runs from its perpetration, This does not apply to fraudulent transfers.

8.  Statute of Limitations—Suspension of Statute of Limitation.

Under section 18, chapter 104, Code, it requires some positive— that is, affirmative—act by the defendant to operate under the clause, "or by any other indirect ways or means obstruct the prosecution of such right." Merely silence will not do, but there must be some act designed to conceal the existence of liability, and operate in some way upon the plaintiff, and prevent or delay suit for it.

9.  Bill of Discovery—Incriminating Discovery.

A court of equity will not compel a discovery if it may possibly lead to or aid in the prosecution of the party for crime.

10.  Statute of Limitations—Conversion of Personal Property.

The period under the statute of limitations for an action for the unlawful conversion of personal property, or for its proceeds, if sold, is five years.

H. M. Russell for appellants, cited 2 Pom. Eq. Jur. §§ 1051, 1052, 1080, 917; 79 Va. 449; 87 Va. 162; 2 Rob. (old) Pr. 44, 45; 1 Leigh, 163; 1 Gratt. 110; 6 Gratt. 427; 1 Munf. 63; 1 Munf. 98; 21 Gratt. 263; 5 W. Va. 33; 10 W. Va, 243; 16 W. Va. 497; 21 W. Va. 504; 26 W. Va. 440; 24 W. Va. 61; Story's Eq. Plead. §§ 578, 595, 524; 2 Story's Eq. Jur. § 1494 and note; 76 Va. 12; 31 W. Va. 487; 106 U. S. 99; 89 N. C. 159; 132 Ill. 80; 47 Kan. 606; 152 Mass. 49; 6 W. Va. 179; 4 Leigh, 474; 120 U. S. 130; 130 U. S. 684; 21 Wallace 342; 76 Me. 71; Code, W. Va. Ch. 104, § 18; 101 U. S. 135; 37 W. Va. 3; Wood on Limitation, 288, 255; 99 Pa. St. 421; 145 U. S. 499; 38 S. Car. 361; 88 Ga. 333; 113 Pa. St. 417; 11 S. W. Rep.(Ark.) 693; 107 Ill. 389; 107 Pa. St. 336; 125 Ind. 421; 39 Pa. St. 92; 37 Vt. 411; 72 Mo. 640; 32 Pa. St. 22; 62 Iowa, 751; 92 Ind. 580; 36 Kan. 628; 34 Pa. St. 12; 40 Vt. 540; 22 N. H. 217; 22 Ohio St. 27; 36 Mich. 487; 10 Pick. 112; 145 Mass. 503; 54 Md. 527; 110 Pa. St. 428; 24 W. Va. 594.

W. P. Hubbard for appellees, cited 5 W. Va. 33; 1 Am. & Eng. Enc. Law, 130; 16 W. Va. 717-722; 8 W. Va. 584; Code, c. 77, s. 25; Id. c. 85 ss. 2, 4, 10; Id. c. 99, s. 14; Id. c. 145, ss. 18, 19, 20; 24 W. Va. 61; 1 Gratt.

110; 23 Gratt. 47; 10 W. Va. 247; 16 W. Va. 546; 87 Va. 170;
2 Sto. Eq. Jur. § 1493b; 10 W. Va. 247; Sto. Eq. Pl. §§ 19,
311; Sto. Eq. Jur. § 1483; 4 Johns. Ch. R. 409; 44 Miss.
677, 681; 1 Johns. Ch. R. 547, 548; Mit. & Tyler, Eq. Pl.
283, 284; 1 Morris (Iowa) 291, 384; 26 Mo. 253; 2 Edw. Ch.
R. 605; 26 Mich. 102; 4 Min. Inst. (s. p.) 1130; 9 Gratt. 379;
25 Gratt. 161; 21 W. Va. 601; 34 W. Va. 217; 23 W. Va.
108; 19 Pick. 112; 32 Pa. St. 22; 72 Mo. 640; 62 Iowa, 751;
36 Kan. 634; 34 Pa. St. 12; 40 Vt. 544; 22 N. H. 217; 22
Ohio St. 27; 145 Mass. 503, 507; 36 Mich. 487; 92 Ind. 580,
588; 105 Mo. 486; 101 Cal. 673; 41 Fed. Rep. 589; 4 Vt. 491.
18 Pa. St. 25; 31 Pa. St. 165; 8 W. Va. 442-3; 105 Mo. 486;
6 W. Va. 168, 178-180; 116 Ind. 80; 101 U. S. 135, 567; 138
Mass. 570; 50 Tex. 637; 73 Ill. 606; 5 B. & C. 147; 17 Gratt;
322, 347–48, pt. 11 of syl.; 46 Ohio St. 604; 5 Humph. 290.

This is a suit in equity in the Circuit Court of Ohio
County by Thompson and Bonnell against the Whitaker
Iron Co., the bill alleging: That in February, 1880, Quincy,
under whom the plaintiffs claim, agreed with the Whitaker
Iron Company, a corporation, to sell it one hundred tons
of iron, and, when it was delivered, the company refused
to accept it, because it did not comply with the contract.
That a correspondence between the parties ensued, and re-
sulted in a final refusal by the company to take the iron,
and in a letter of March 11, 1880, communicating such re-
fusal, the company said to Quincy: "We regret we can
not help you out, and the iron is here, but will cheerfully
aid you in any manner we can in disposing of it. In mean-
time it will be well cared for, being in our yard, at no ex-
pense to you; except any necessary handling and moving
out when disposed of. Should anything occur to change
our views, or we see the way clear to use it or find a place
for it, we will communicate with you, and will promise to
buy no iron of its character without first advising you."
That no correspondence or communication between the
parties took place after this letter until March, 1892. That
Quincy and those claiming under him permitted the iron to
remain, as they believed, in the hands of the Whitaker Iron
Company, in accordance with the arrangement suggested

in the letter, without inquiry, confiding in the honesty of Nelson E. Whitaker, then its secretary, and later president, and in the safety of the iron in their charge, and trusting the iron would remain in the yard, and trusting that should anything occur to change the views of the company or of said Whitaker, or in case the company could see its way clear to use the iron or find a place for it, the company and Whitaker would communicate with the owners of the iron. That in March, 1892, Bonnell called on Whitaker, then the president of said company, and inquired about the iron, when Whitaker said he did not recollect holding any such iron, when a letter touching the iron was shown him, and then he said he had an indistinct recollection of some iron which the company had sold some years previous, and that might have been it, and promised to look up the matter and report to the owners. That, not hearing from Whitaaker, they wrote him 23d of March, 1892, but received no answer, and on 26th February, 1894, wrote again asking if the iron was accessible so they might dispose of it, and received a reply to the effect that the company, so far as it had been able to investigate, was led to believe that the iron had been reshipped to Quincy, suggesting the long time that had elapsed, questioning the authority of the plaintiffs to discuss the question, and assuring them that the iron was not then in possession of the company, and had not been for a long while, and declining to take the matter up or treat on the subject. That later an attorney demanded the iron of the company, and it refused to deliver the iron or account for its proceeds. The bill alleged that Whitaker and the company conspired to cheat and defraud Quincy and, to that end, sold or used the iron, and converted the same or its proceeds to the use of the company. The defendant demurred to the bill, assigning as causes adequate remedy at law, the statute of limitation of five years, *laches*, that no discovery could be made by defendants of any value to plaintiffs, and that no right of recovery, or other equity was shown by the bill. The demurrer was sustained, and the bill dismissed, and the plaintiffs appeal.

BRANNON, JUDGE (after stating the facts) :

Equity jurisdiction in the case can not be sustained on

the theory of trust.   If a trust, it must be an  express one.
What were its terms ?   The trustee was not vested with the
title and charged with any specific duty or agency for the
benefit of Quincy.   Was it a simple or passive trust, the
trustee being a mere passive depositary of the property,
with no active duties to perform?   It could not be even
this, in any other sense than a common-law bailment; for
no title vested in the company, but it had  possession only,
and no property, at utmost, but that special property which
rests in the bailee under the law of bailment.   It was not
an active trust, as that is a trust in which the trustee is not
a mere depositary, but has special active duties to perform,
pointed out by him who created the  trust, by terms of its
creation.   27 Am. & Eng. Enc. Law, 6.   The company's
letter is all that could originate a trust, and it was not ac-
cepted by Quincy, as he did not reply to it.   It remained
unaccepted for twelve years, at least.   No trust relation was
created between the parties.   If a bailment, it was simply a
deposit, for mere safe keeping—an accommodation, without
specification of purpose of bailment, except for safe keep-
ing, without reward.   And if we say that there was, by si-
lence, an acceptance, and the company ought to be bound
by it, that left the property absolutely at command of
Quincy, the company assumed no obligatory duty towards
it, made no engagement to sell it which could be  called an
engagement, but simply allowed the iron to lie on the com-
pany's premises, unqualifiedly subject to his order.   There
was no engagement, but as a mere depositary for safe keep-
ing.   It was not a trust, but a  mere *depositum* without re-
ward.   3 Minor, Inst. 271.   There was no engagement fur-
ther than to let it lie on the premises, and not steal or em-
bezzle or convert it to the depositary's use.   That liability
did exist, but that is not a  technical trust, giving equity
cognizance over it, but only a  common-law bailment, with
right to demand the iron, and, in default of delivery, to
bring a common-law action, *detinue* to get the iron, or *trover
and conversion* if redelivery was refused or the iron had been
sold, or *assumpsit* if sold and the  party wished to sue for
money had and received.   In a sense, a bailment is a
trust, but not such as is cognizable in equity, but is a sub-

ject of common-law jurisdiction.    As well say that where a man loans another a horse,  or  leaves  it in  his pasture, or deposits anything on his premises, to lie there a while until he can sell it or find a place for it, equity has jurisdiction. The theory is that the  company  converted the iron  to its own use by sale or use; but  that does  not, as argued, impress the  transaction  with the  character of a trust, but is conclusive of a right to sue at law:

The cited case of   *Vilwig* v. *Railroad Co.*, 79  Va.  449, was a question of agency  and account.   *Bacon* v. *Rives*, 106 U. S. 99 (1 Sup. Ct. 3)  was  an active trust, where one had intrusted money to another  to  invest according to instructions.   It is  said  fraud  exists.    What if  it does ? Does that  give  equity  jurisdiction ?   Can  not  such fraud  be  relieved  at  law ?   The  only  fraud  is concealment  of  sale  or  conversion,  and  a  desire  to  avoid responsibility.   *Meek* v. *Spracher*, 87  Va.  162  (12 S. E. 397) was a suit by a vendee  to  abate  purchase  money for land for fraud, and can not  help  us  in  this case.   Say there is fraud.    Equity, having no  distinct  power  as to fraud, can not convert a fraud into a trust, and thus support a bill for relief.    *Mitchell* v. *Green*, 10  Metc.  (Mass.)  101.   Has equity jurisdiction because of  want  of  discovery ?   Equity has jurisdiction of "bills of discovery" properly or emphatically so called.    They ask for discovery only, to be used as evidence in a court of  law  or  other  court, and asking no other relief, when  discovery  is  had  the case ends.   They are limited to matters cognizable  in  another court.   This bill is not such a bill, as it asks for discovery, and a decree against the Whitaker Iron  Company  for  the price of the iron if sold,  or  its  value if  used by the company, and for general relief, and is called a "bill for discovery and relief." Where a bill is for a cause giving jurisdiction in equity—as, for instance, trust—we may say  discovery is only incidental to relief, relief being the  main  object, and you can proceed to relief though discovery fail; but  where the cause or subject-matter is one proper  for a court of law, not equity, we may  say  relief is  incident  to discovery; and  in  the latter case, the discovery being  the only ground for equity jurisdiction, according  to  English  cases and some Ameri-

can, the bill could not be maintained, but you must sue at law and file a bill for discovery. Story, Eq. Pl. § 312; *Mitchell* v. *Green*, 10 Metc. (Mass.) 101; Adams, Eq. (7th Am. Ed.) 20 and note; 1 Daniell, Ch. Prac. 547, 548, and notes; 2 Beach, Mod. Eq. Jur. § 858. But it is now established that, though the matter be one proper for the law court, yet, where a proper case for discovery is presented, the bill asking both discovery and relief is maintainable; and the court, having jurisdiction for one purpose—discovery—will not tell the party, after getting it, to go into a court of law, but will go on to give relief. *Chichester* v. *Vass*, 1 Munf. 98; *Lyons* v. *Miller*, 6 Gratt. 427; Bart. Ch. Prac. 306; *Hotchkiss* v. *Plaster Co.*, 41 W. Va. 357 (23 S. E. 576).

Then, does this bill present a proper showing for discovery to hold its footing in a court of equity ? Here we must look at the character of the bill. In a pure bill of discovery it is not necessary to allege that only by discovery can the plaintiff sustain his demand. If he even appears to have other evidence, or a sufficiency to maintain his action at law, his bill of discovery can not be defeated. He can maintain it to get more evidence by discovery. He does not ask full relief of equity, but only its help to make him stronger and safer with proof for his law action than he is; but where he asks chancery for both discovery and relief, as his demand is proper for the law court, and seeks to transfer it to the court of chancery, he must show cause for going into chancery, and that is by showing that only by discovery can he recover. *Russell* v. *Dickeschied*, 24 W. Va. 61; Story, Eq. Pl. §§ 313, 324a; Bart. Ch. Prac. 306; 1 Story, Eq. Jur. § 74; 1 Pom. Eq. Jur. § 229; 1 Am. & Eng. Enc. Law, 203. But note that this principle of averring that discovery is indispensable to enable the plaintiff to sustain his demand applies only where his demand is one cognizable at law, not where his demand is of a nature itself entitling him to go into equity. *Lancey* v. *Randlett*, (Me.) 13 Atl. 686. The fact that recent statutes make adverse parties witnesses at the bidding of their adversaries does not take away equity jurisdiction. *Russell* v. *Dickeschied*, 24 W. Va. 61.

Now, let us look at the bill in this case. It shows ample evidence, by letters and otherwise, that the iron was in the hands of the company, and had been sold or used, and a refusal on demand to surrender or pay for it. The company admitted it may have sold the iron and wrote that it had not the iron, and it must have either sold or used it. Whitaker is a party, but only because president. The bill shows that he can give evidence of what the plaintiff claims. Bonnell can in connection with letters. The bill itself negatives the basis for discovery and equity jurisdiction, and this is ground of dismissal on demurrer. Story, Eq. Pl. § 313; Am. & Eng. Enc. Law, 205. If the fact that discovery is not indispensable for evidence appear from bill, answer, or proof, it will be dismissed. *Jones* v. *Bradshaw*, 16 Gratt. 355; 1 Pom. Eq. Jur. § 229. There are averments in the bill, taken alone, tending to give equity jurisdiction, but others showing that adequate relief at law can be had, and that the averments to show trust fraud, and want of discovery, taking in the whole cast of the bill, are colorable only to sustain equitable jurisdiction to get rid of the effect of time, or other reason. Where such is the case, that is ground for refusal of jurisdiction. *Laidley* v. *Laidley*, 25 W. Va. 525; 1 Story, Eq. Jur. § 74; 1 Pom. Eq. Jur. § 229.

Another reason against discovery is that it might expose the party to criminal prosecution for embezzlement. Code, c. 145, s. 19. We need not assert that it would do so. If, by possibility, it might do so, that is ground for refusing discovery, as equity will not compel one to furnish evidence which may lead to his prosecution, or furnish a link in the chain of evidence to convict him. *Bank* v. *Nelson*, 1 Gratt. 110; Story, Eq. Pl. §§ 524, 575; 1 Greenl. Ev. § 451.

As there is no jurisdiction in equity, that closes the case; but there is another defense ending it, and that is the defense of time. Regard the matter as a trust. If purely one of equity cognizance, *laches* or staleness would bar. But, if it could be regarded a trust, it is not one cognizable only in equity, but is such a one as admits of legal remedy; and the statute of limitations applies to a trust, unless it be

one only in equity enforceable. Counsel for appellant admits that the nature of the demand is one of common-law jurisdiction; that is, concurrent. That applies the statute by analogy. The trusts not within the statute are direct or express trusts, cognizable only in equity. Bart. Ch. Prac. 110; 1 Rob. Prac. (New) 458; 2 Wood, Lim. Act. § 200; *Sheppards* v. *Turpin*, 3 Gratt. 373; *Speidel* v. *Henrici*, 120 U. S. 377 (7 Sup. Ct. 610); *Landis* v. *Saxton* (Mo. Sup.) 16 S. W. 912. Where the demand is of legal nature, though in a court of equity, the court will apply it. *Wilsons* v. *Harper*, 25 W. Va. 179; *Smith* v. *Wehrle*, 41 W. Va. 270, (23 S. E. 712). Where the trust is such as admits of a law jurisdiction, the statute applies, as authorities just cited show. And were it a trust of purely equitable cognizance, known only to equity, then that limitation created by equity, called *laches* would apply. *Bland* v. *Stewart*, 35 W. Va. 518 (14 S. E. 215) and cases. The defenses of both *laches* and the statute of limitations may be made by demurrer. *Jackson* v. *Hall*, 21 W. Va. 601; Opinions in *Laidley* v. *Laidley*, 25 W. Va. 530, and in *Crumlish's Adm'r* v. *Railroad Co.*, 28 W. Va. 637, and in *Van Winkle* v. *Blackford*, 33 W. Va. 582 (11 S. E. 26); *Whittaker* v. *Improvement Co.*, 34 W. Va. 217 (12 S. E. 507).

But the defense of time is sought to be met with the argument that a demand for the iron was necessary before suit and the statute could not run until that demand, which was not made until 1894. I think a demand was necessary before suit could be brought. But can it be delayed forever? It is a right vested in the party, like the right to recover. Is it wise policy to let it live forever, any more than the right of action? The creditor can not keep the debtor in debt indefinitely, 13 Am. & Eng. Enc. Law, 726. I think Ang. Lim. § 96, states the rule properly: "Though the statute begins against a note payable on demand from date, it does not do so against a note payable so many days after demand. In the latter it commences to run only from the time of the demand. The demand must be made, however, in a reasonable time from the time of date. What is a reasonable time for this purpose does not appear to be settled by any precise rule, and must depend on circum-

stances. If no cause for delay be shown, it would seem reasonable to require the demand to be made within the time limited by the statute for bringing the action. There is the same reason for hastening the demand that there is for hastening the commencement of the action." See *Landis* v. *Saxton* (Mo. Sup.) 16 S. W. 912; *Atchison, T. & S. F. R. Co.* v. *Burlingame Tp.* (Kan. Sup.) 14 Pac. 271; *Railroad Co.* v. *Byers*, 72 Am. Dec. 770; *Hintrager* v. *Troul*, 69 Iowa, 746 (27 N. W. 807); *Shaw* v. *Silloway*, 145 Mass. 503 (14 N. E. 783); *Hamilton* v. *Hamilton*, 55 Am. Dec. 585; *High* v. *Board*, 92 Ind. 580. Judge Paul, in his opinion said: "The case under consideration does not belong to that class of cases where delay in making a demand is contemplated by the express terms of an obligation payable on demand, as in *Jameson* v. *Jameson*, 72 Mo. 640, where the obligation contained a condition that, if the payee should demand payment during her natural life, it should be due and payable; but in case of her death before any or all of the debt should be paid, it should not be paid at all; or where the maker of a note promised to pay the payee thereof four hundred dollars in produce or wood from the farm, as he might want to use the same, as in *Stanton* v. *Stanton*, 37 Vt. 411; or where there was a distinct acknowledgment of liability, as in *Girard Bank* v. *Bank of Penn Tp.* 39 Pa. St. 92." Almost three times the limit allowed for the recovery of personal property or money had and received (five years) had elapsed. To allow such time would frustrate the whole policy—the salutary effect of the statute.

Another argument against limitation is that defendants fraudulently concealed the cause of action. This is different from the point that, when suit arises from fraud, the statute does not run until the discovery of the fraud giving birth to the cause of action. Our statute (Code, c. 104, s. 18) provides that where one, "by indirect ways or means, obstructs the prosecution," of a right, the time of obstruction shall be counted out. It requires some affirmative action on defendant's part. Mere silence will not do. He is not called on to go to the plaintiff, and tell him he has cause of action. The creditor must use some diligence to ascertain his rights, and can not keep his right of action

alive by neglect simply because of defendant's silence. Nothing else is shown in this case than silence. The Indiana act says: "If any person liable to an action shall conceal the fact from the person entitled thereto, the action may be commenced at any time within the period of limitation after the discovery of the cause of action," 2 St. Ind. 1876, p. 128, § 219. Note that this act says merely "conceal"; ours requires more, it would seem, from the words "indirect ways or means obstruct." It requires what in fact obstructs. 4 Minor, Inst. 622. The United States supreme court, construing the Indiana act, in *Wood* v. *Carpenter*, 101 U. S. 135, held that mere concealment by silence would not save the case from the statute, but there must be some positive action, and cited with approval cases holding that where a party not merely kept silence, but, when asked, denied the fact giving action, he was not within the exception, and that the party must use diligence to discover the cause of action, and, if he had the means to discover, he will be held to have known of the existence of the cause of action. If he has means and sources of information, he must use them, and not rely on defendant's word. Justice Swayne said: "Statutes of limitations are vital to the welfare of society, and are favored in law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. Important policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay, extending to the limit prescribed, is itself a conclusive bar. The bane and antidote go together." See 2 Wood, Lim. Act. 708; *Bank* v. *Carpenter*, 101 U. S. 567; *Walker* v. *Soule*, 138 Mass. 570; *Foster* v. *Rison*, 17 Gratt. 322; *Douglass* v. *Corry*, 46 Ohio St. 349 (21 N. E. 440).

The plaintiff's counsel would also take the case out of the statute by claiming that the cause of action arose from the fraud of the company. In what does it consist ? In the sale or conversion of the iron. Whether the period of limitation where the cause of action grows out of an act of

fraud runs from the perpetration of the fraud, or from the discovery, has given rise to great conflict of opinion.   Ang. Lim. § 183; 2 Wood, Lim. Act. 702; *Snodgrass* v. *Bank*, 60 Am. Dec. 511, note,   I speak now of courts of law, as it must be admitted the courts of equity have often refused to apply the statute by analogy until the discovery of the fraud or until after a reasonable time for its discovery.   13 Am. & Eng. Enc. Law, 680, 728.   The legislature has said that, in certain actions, certain periods shall bar.   Where do courts get the power to say they shall not?   In certain instances of undiscovered fraud, its application works hardships; but there is the letter of the act to subserve a great and wise policy rising above individual hardships.   Shall the courts enact exceptions?   It is only law making to do so.   The legislature contemplated the hard cases, and did not except them.   Shall the courts make what exceptions they choose, when they see the legislature has made those exceptions which it thought wise to make?   This doctrine, spoken in other words by Spencer, C. J., in the leading New York case of *Troup* v. *Smith's Ex'rs*, 20 Johns. 33, is the true guiding principle.   Prof. Minor says that the doctrine is supposed to be established in Virginia that in a court of law it is not admissible to reply to a plea of the statute that the cause of action was founded on a fraud committed by the defendant, and that it did not become known to the plaintiff until within the period of limitation.   4 Minor, Inst. pt. 1, p. 623.   More so can it be said in West Virginia, as in Virginia there is the case of *Massie* v. *Heiskell*, 80 Va. 789, which qualifies it; but that case was in equity, is not well considered, and is not binding on us. *Callis* v. *Waddy*, 2 Munf. 511; *Rice* v. *White*, 4 Leigh, 474; *Cook* v. *Darby*, 4 Munf. 444, and *Fant* v. *Fant*, 17 Gratt. 14, say that the statute runs from the act of fraud.   Point 6, *Vanbibber* v. *Bierne*, 6 W. Va. 168, a suit in equity, clearly holds that the statute runs from the act of fraud, not from its discovery; and Judge Haymond approves *Callis* v. *Waddy*, but says, if the party fraudulently concealed the cause of action where the facts on which it rested were exclusively within his knowledge, that meets the statute.   I do not say that where the facts giving cause of action are

within the defendant's knowledge exclusively, and he is bound to communicate them, and the plaintiff has no notice of anything to suggest or inform him of his rights, such would not be an obstruction under the statute; but I do say mere silence will not. Now, note a distinction. I say the statute starts from the act of fraud done, open or concealed—that is, whether the act be of such character that it conceals itself or not; but fraudulent tricks or acts of the defendant to conceal and obstruct the prosecution of an action are another matter, for that is an express exception in the statute. That very exception denies the right to say that time does not run from the act of fraud, because it only allows the time of actual obstruction to be excluded. It assumes that the statute has begun to run, and excludes certain time for certain causes—simply makes a subtraction from the total time. From reading, I think there has been a confusion of mind on this matter, and that it largely explains the conflict of opinion.

I will note here that the fraud here is the conversion of the property without reporting it. No inquiry made as to the iron from February, 1880, till March, 1892, when one of the plaintiffs in person saw the company's president, and he said he had no recollection of the iron—a thing reasonable in a large business after twelve years; but, being shown letters, admitted that the company once had the iron, and likely had sold it. Here is no concealment. The president promised to investigate and write, but did not do so, until two years later, when further inquiry was made by plaintiffs. If this was obstruction, it would count out two years only; but this was no obstruction. The plaintiffs were put on inquiry. They knew of the deposit of the iron, of the fact the iron was not there; and that no deposit of its proceeds for them had been made. There can be no obstruction when the party's eyes are open to the facts. Just here is the place to say that where the rule prevails, even in equity, that time runs only from the discovery of the fraud, negligence will prevent the party's saying he did not sooner discover. If he has means of knowing or ascertaining, where he is put on inquiry, where ordinary prudence, for his own interests, suggests

that he must inquire, he must do so; else the statute runs. 4 Minor, Inst. pt. 1, p. 622; 13 Am. & Eng. Enc. Law, 682; 2 Wood, Lim. Act. 706. Ang. Lim. § 187, says: "The presumption is that if the party affected by any fraudulent transaction or management might, with ordinary care and attention, have seasonably detected it, he seasonably had actual knowledge; and the plea of the statute is not answered by the fact that the action is founded on a simple breach of trust, or upon what is a bare violation of an engagement, for allegations upon such grounds might be made in all cases." And section 190 says: "Courts of equity will not interfere if a party slumber upon his right unreasonably, after the detection of fraud, or the means afforded of protection." Here the parties for years knew the facts, calling on them, in their own interest, to exercise diligence. Had they done so, there would have been no trouble; but they let it sleep, without a word of inquiry, twelve years—I may say fourteen—till people who managed the company's works, or their employees, who would know the facts, are dead or gone away, till the means of honest investigation are gone, and a court can not charge the company with safety. The iron may have been reshipped to Quincy. Who can now know? He is dead. Strange that he did not have it reshipped, if he did not. Unusual to say the least.

I want to add a word to say that this is said to be a fraudulent conversion of the iron, and that the statute does not run. The statute runs from the conversion. 1 Rob. Prac. 504; 1 Wood, Lim. Act. 468; Ang. Lim. § 304. In *Cook* v. *Darby*, 4 Munf. 444, a carrier fraudulently opened packages intrusted to him, and took part of their contents, and it was held the statute applied to such a case. The court said it was a case of mere bailment and conversion, and the statute applied. So here.

Regarding this case as a legal demand, and the statute applying, I have said thus much as to the statute. Courts of equity, where they have concurrent jurisdiction in acting on legal demands, apply the statute by analogy, unless we make an exception from discovery of fraud, which exception I do not think can be made; but I think I have

shown that, even if equity can make in any case such exception, it can not in this, because there is no fraud, and if there were, the plaintiffs are guilty of gross negligence and delay, as above stated.

We therefore affirm the decree.

---

# CHARLESTON.

