# CHARLESTON.

DUDLEY, *Adm'r.* v. NISWANDER *et al.*

Submitted February 26, 1908.   Decided April 20, 1909.

1.  DISCOVERY—*Nature of Remedy.*
    Equity has jurisdiction of a bill seeking to substitute an equitable for a legal forum when there is prayer for discovery and there are averments showing the indispensibility thereof. (p. 466.)

2.  EQUITY—*Amended or Supplemental Bill—Discretion of Court.*
    Amendment or supplement to a bill in equity, fitting the developments of the case, if the identity of the cause of suit is preserved, may, in the sound discretion of the court as to the propriety and time of the same, be allowed. (p. 466.)

3.  EXECUTORS AND ADMINISTRATORS—*Actions—Parties—Intervention—Persons Entitled.*
    In a suit in equity by an administrator for the recovery of a fund belonging to the estate of his decedent, it is proper to allow a creditor, seeking to charge the fund with the payment of a debt of the decedent, to intervene by petition. (p. 467.)

4.  EQUITY—*Demurrer to Bill Good in Part.*
    A demurrer to a bill as a whole is properly overruled if the bill is good in part. (p. 467.)

5.  EVIDENCE—*Weight and Sufficiency—Varying Writing.*
    Though in a written contract under seal, an admission, in-

voked merely as evidence in favor of one claiming no rights under the contract and invoked not as having acquired the essentials of an estoppel in his behalf, may be explained or qualified by parol testimony, even to the extent of contradicting the terms of the contract in which it is contained; but cogent proof is required in the premises. (p. 468.)

[MILLER, PRESIDENT, absent.]

Appeal from Circuit Court, Wood County.

Bill by J. W. Dudley, administrator of the estate of Mary J. Plumb, deceased, against G. W. Niswander & Co. and others. Decree for complainant, and defendants appeal.

*Affirmed.*

McCLUER & McCLUER, for appellants.

C. A. KREPS, for appellee.

ROBINSON, JUDGE:

A mercantile firm, doing business in Parkersburg, under the style of G. W. Niswander & Co., became indebted to Mary J. Plumb in the sum of $1400, for money borrowed. The firm was composed of G. W. Niswander and W. C. Plumb. The latter was the son-in-law of the former and the son of Mary J. Plumb. Several months before the maturity of the note given her by the firm for the money, Mary J. Plumb died. She was survived by D. S. Plumb, her husband, and W. C. Plumb, her only child and heir at law. She left a will, devising, in general terms, practically all of her property to her son. No provision whatever was made therein for her husband. This will, known to both father and son, was not probated. No administration of the estate was sought by them. On the day of the maturity of the note, Niswander, together with his son-in-law and partner, and the father of the latter, adjusted the payment of the note by the following writing:

"A statement showing the monies in my hands, the amounts which I have paid out, and the statement of account between M. J. Plumb, deceased, and W. C. Plumb.

| | |
|---|---|
| By amount received as belonging to M. J. Plumb | $1484.00 |
| To amount paid Bently and Gerwig for funeral expenses | $65.00 |
| To Varley Bros. for carriages, funeral exp. | 16.00 |
| To digging grave | 7.00 |

To Dr. W. J. Davidson, medical services ...  14.50
To C. A. Smith, legal services ...........  12.00
To McCluer & McCluer, legal services, pre-
    paring statement of account ........  5.00

                              $119.50  $1484.00
Leaving a balance in my hands of said fund of........$1364.50
one-third of which amount, to-wit, $454.83 D. S. Plumb will
be entitled to, less the amount due from him to the store of
$26.11.  This will leave the amount net due D. S. Plumb out of
the amount aforesaid of $428.72 which is the net amount, which
the said D. S. Plumb is entitled to receive out of the above fund
as his interest.

"And whereas, by an agreement between G. W. Niswander
and D. S. Plumb, on account of said G. W. Niswander *becom*
his security on an appeal bond and decision rendered against
him by E. F. Wilson, Justice of the Peace, in favor of the Star
Grocery Co., to the Circuit Court of Wood County, it was
agreed between him, and the said D. S. Plumb, that he should
retain $100 to indemnify him, the said G. W. Niswander until
it should be ascertained whether the said justice of the peace
should be reversed, and whether the said D. S. Plumb should
have the costs to pay or not, and in event the said G. W. Nis-
wander does not have the costs to pay, then the said D. S. Plumb
is to receive this $100, which the said G. W. Niswander was per-
mitted to retain out of the fund aforesaid, which would leave
the amount now which the said D. S. Plumb would be entitled
to receive the sum of $328.72, leaving the $100 for the determi-
nation of the suit in the Circuit Court of Wood County.

"And it is further agreed on the part of the said D. S. Plumb
that the receipt of the $328.72, which he hereby acknowledges
is in full of all claims against the said W. C. Plumb on account
of the fund aforesaid, and the $100 will be left in the hands of
the said G. W. Niswander for the determination of the suit in
the said court.

"And it is further understood and agreed between the said W.
C. Plumb and D. S. Plumb that the said W. C. Plumb is entitled
to the sum of $909.66, which the said W. C. Plumb agrees is in
full of all his claim for the above fund.

"And it is mutually acknowledged between them, that this is a full and complete settlement between them, of all claims of one against the other with reference to the fund of $1484.00 left by M. J. Plumb, now deceased.

"Witness the following signatures and seals this the 1 day of Jan'y, 1903.

W. C. PLUMB,    (Seal.)

D. S. PLUMB,    (Seal.)"

Two copies of this writing were made, one copy being retained by each party thereto. By the firm's checks, Niswander made distribution of the amount of the note, as expressed in the writing recited above. The check to his partner was endorsed back to the firm, for that partner's credit therein. It will be observed that this distribution was directly according to the statute of descent and distribution.

Soon after this transaction, D. S. Plumb called upon the officers of the Traders Building Association, to which Mary J. Plumb was indebted at the time of her death, and told them of the note and what had been done in the premises. He suggested to them that there was an opportunity to make the money due the association; that his deceased wife had left the amount of the note and that it had not gone into a proper administration of her estate. Later he exhibited to the officers of the association his copy of the writing. Thereupon, the estate of Mary J. Plumb was committed for administration to the sheriff of Wood county. As such administrator, he instituted this suit in equity against the firm of G. W. Niswander & Co., its individual partners, and D. S. Plumb, alleging that they had combined together to defraud the estate of Mary J. Plumb and creditors thereof, by agreeing to make and by making the division of the proceeds of the note, as above set forth, without the intervention of an administrator. The bill avers that some one without authority delivered the note into the possession of Niswander or into the possession of the firm. It further avers that these parties, "though acknowledging that they had such note, declined to deliver the same to complainant, and declined and refused to permit plaintiff to have a copy thereof or to see and inspect the same, or to give him any memorandum thereof; and complainant says that he has been unable to get any description of said

note or of the exact amount thereof, or the date thereof, or the time of payment thereof, or who the real makers of said note were, and consequently he has. been unable to file any suit at law upon said note for. want of the proper description of the date and of the parties to said note, and hence it has been necessary for him as he is advised and believes to come into a court of equity for a discovery and for such general relief in the premises as to equity appertains in such cases." It is distinctly alleged that the attempted payment and distribution of the proceeds of the note were void and constituted no discharge of the makers thereof, and that the acts of the defendants are fraudulent and void as against the creditors of the estate of Mary J. Plumb and plaintiff's rights as administrator thereof. Accordingly, the bill prays that G. W. Niswander and W. C. Plumb may be required to produce and surrender said note which they, as individuals or as a firm, executed, and to make full disclosure in reference thereto; that the distribution of the assets by the writing aforesaid and the surrender of the note may be set aside and cancelled as void against plaintiff and the creditors of the estate represented by him; that there be an accounting as to the proceeds of the note by the defendants; and that the fund may be distributed rightfully in the cause.

Defendants, in resistance, maintain that the note, for valuable consideration, had been assigned by Mary J. Plumb, in her lifetime, to her husband; that the proceeds of the note actually belonged to him; that the note being a negotiable one and properly endorsed, the firm owing the same is acquitted of the indebtedness by a payment of the obligation to one having possession; and that the amount paid to W. C. Plumb therefrom was merely in settlement of what his father owed him. D. S. Plumb answered and testified that he gave the information to the officers of the building association, and surrendered to them a copy of the writing, because he was drinking and had become angry with his son and wanted to give him trouble, but that he was a *bona fide* owner of the note by purchase from his wife before her death.

Sufficient has been said for an understanding of the controversy. It is useless to detail more. A decree has been made substantially as sought by plaintiff. From that decree comes this appeal. We shall briefly consider the assignments against the correctness of the decree.

The demurrer to the original bill was properly overruled. Sure ground of equity cognizance is set forth. A necessity for resort to equity is shown. Defendants contend that the bill does not allege that the discovery asked is indispensable, because there is exhibited the writing hereinbefore recited, showing the amount of the proceeds of the note. But that writing does not show what the plaintiff seeks to ascertain; that is, who actually, the firm or its individual members, should be called to account. It gave plaintiff no safe information for an action at law. The bill shows the materiality and indispensibility of a discovery. It does not allege the same in terms, but sets forth the facts from which such materiality and indispensibility appear. This meets the rule, applicable to this case, that "if the demand of the plaintiff be legal, and therefore not cognizable in a court of equity except on the ground of discovery, it must be averred in the bill that the discovery is indispensable for lack of other evidence." Hogg's Eq. Pro., § 164. By this rule it is not meant that the mere assertion of the fact must be made in the bill, but that the averments must be such as to show that it exists. Where a plaintiff "asks chancery for both discovery and relief, as his demand is proper for the law court and seeks to transfer it to the court of chancery, he must show cause for going into chancery and that is by showing that only by discovery can he recover." *Thompson* v. *Whitaker Iron Co.,* 41 W. Va. 580. "In a bill to substitute an equitable for a legal forum a prayer for a discovery, without any averment, showing its materiality or necessity, is naught? *Armstrong* v. *Huntons,* 1 Rob. 323. Plaintiff, in the case under consideration, clearly shows cause for going into chancery, by showing that only through a discovery can he assert his rights.

It was not error to overrule the objections to the filing of plaintiff's amended and supplemental bill, and to the petition of the creditor, the Traders Building Association. The court has sound discretion in permitting amendment or supplement to fit the developments of a suit in equity, and such discretion as to the propriety of the time of filing the same. Hogg's Eq. Pro., § § 172 *et seq.,* 321 *et seq.* The rule demands that the identity of the cause of suit be preserved. It was preserved in this instance. And it was quite proper to allow a creditor to intervene by petition. A fund was sought to be recovered by an admin-

istrator which that creditor claimed the right to charge with debt. Equity, having acquired jurisdiction to recover the fund, will go on, if asked, to adjust rights of creditors relating to it. *Yates* v. *Stuart's adm'r.* 39 W. Va. 124; *Hotchkiss* v. *Plaster Co.;* 41 W. Va. 357; Barton's Ch. Pr., § 102. The bill sought not only to recover the fund, but also to distribute it properly. The petition was consistent with the object of the bill. "Where a petition, sought to be filed in a pending suit, sets forth such interest in the subject matter thereof, as to make the petitioner a proper party to the suit, and he seeks by such petition to be made a party to it, it is the court's duty to entertain the petition and have him made a party to the suit." Hogg's Eq. Pro., § 227.

Demurrers to the amended and supplemental bill and to the petition were not well taken. What we have said as to the filing of these papers applies here. It may be true that an administrator cannot set aside the act of his decedent on the ground of that decedent's fraud. But the averments in the amended and supplemental bill that if an assignment of the note to D. S. Plumb was actually made by Mary J. Plumb in her lifetime, it was in fraud of creditors, does not destroy that pleading in its correct particulars. The demurrer to the amended and supplemental bill was to the whole thereof, a part of which bill was good; therefore, it was properly overruled, even if part of the bill was bad. Barton's Ch. Pr., § 110. At any rate, the allegation complained of is wholly immaterial, since the decree is sustained by the reasonable purport of the evidence and the correct inferences therefrom that no assignment of the note ever took place. But the similar allegation in the petition of the creditor was not out of place. A creditor could assert such fraud. Nor are these pleadings multifarious as joining several distinct actions in one and asking relief against separate and distinct defendants. They simply tend to one end—the relief sought by the original bill.

The assignment that the final decree is not sustained by the evidence must also be denied. That decree finds that the note in question belonged to Mary J. Plumb at the time of her death; that Niswander and W. C. Plumb had notice of such fact at the time of their pretended payment thereof; and that the distribution of the proceeds thereof, as is represented in the writing exhibited, was illegal and void and constituted no payment of

the debt by the firm of G. W. Niswander & Co., the makers of said note, to the estate of Mary J. Plumb. It adjudges that the firm pay to the plaintiff administrator the amount of the note, less the funeral expenses and medical services paid therefrom, and refers the cause to a commissioner for ascertainment of the matters proper for a settlement of the estate and distribution of the assets. A thorough consideration of the evidence, a review of all which it will avail nothing to make here, convinces us that this decree is by no means wrong. It is strongly sustained by the formal terms of the contract between D. S. Plumb and W. C. Plumb, which was prepared by the direction and under the immediate view of Niswander. That contract is wholly inconsistent with the claim which all these parties now make in this suit. "Anything said by the party may be used against him as an admission provided it exhibits the quality of inconsistency with the facts now asserted by him in pleadings or in testimony." 2 Wigmore on Ev., § 1048. But it is claimed that this contract was executed by mistake; that it was overlooked that counsel had drawn it so as to denominate the note as belonging to Mary J. Plumb at her decease; that it was not intended to express therein the fact that the fund was "left by M. J. Plumb, now deceased," or that the amount was "received as belonging to M. J. Plumb." And it is insisted that the other indicia which appear in that paper evidencing that Mary J. Plumb was the owner of the note when she died are mistakenly there and that they were never intended by the parties. The admission in the contract that the note belonged to the estate of Mary J. Plumb, deceased, may be explained or overcome by parol testimony, as was sought to be done by defendants. 1 Enc. of Ev. 396. The contract is introduced solely as evidence of this admission of the parties thereto and Niswander who took part in having them make it. The contract is not invoked as between the parties to it, but as evidence of an admission favorable to the claim of a third party. In other words, it is invoked merely as evidence of an admission, not as a contract under which rights are claimed. Being so offered, merely as evidence and not as a contract, it may be rebutted by parol or other competent evidence, even to the extent of explaining, modifying or contradicting its terms. And the same is true notwithstanding the writing is under seal. 1 Greenleaf's

Evidence, § 211.  The rule against explaining, modifying or contradicting a written contract by parol does not apply here, since we are not dealing with the contract for the assertion of rights thereunder, but we are dealing with it solely as evidence of an admission.  The facts therein admitted may be denied and shown not to have existed.  Non-contractual and non-judicial admissions not made under such circumstances as to constitute an estoppel are not conclusive, but are open to explanation and may be rebutted or controlled by other proper evidence.  This principle generally applies, though such admissions are made under oath.  1 Elliott on Ev., § 242; 2 Wigmore on Ev., § 1058.  Such admissions are mere evidence which may be rebutted.  Their weight depends upon their character and the circumstances under which they are made.  Yet, "admissions deliberately made and clearly proved are very strong and satisfactory evidence against the party making them."  1 Enc. of Ev. 611; 17 Cyc. 814.  Being of such strong character, deliberate admissions, clearly established, particularly those in writing, can only be explained or overthrown by convincing proof.  "Admissions may be explained or qualified, and the party is at liberty to show that the fact admitted by him did not exist, but cogent proof is required in order thus to overcome a deliberate admission, especially a written admission."  17 Cyc. 816.  It has been held that written admissions, when made by a party before a controversy arose, outweigh his oral testimony to the contrary given after the controversy has arisen.  *Moore* v. *Grayson*, 132 Cal. 602; *Buford* v. *McGetchie,* 60 Ia. 298.  It is at least consonant with reason to say that when an admission in writing, especially in an instrument executed with the solemnity of seals, is clearly established against a party, he should not be permitted to contradict it by evidence other than that which is clear, full and precise.  *In re Irvine,* 102 Cal. 607; *Rice* v. *Bank,* 7 Hump. 39; *Spurlock* v. *Brown*, 91 Tenn. 241.  "Language expressing more than a preponderance is generally used in declaring the degree of proof necessary in order to vary or contradict the terms of a written instrument by parol evidence."  17 Cyc. 773.  Now, the evidence by which it is sought to overcome the admission in the written contract that Mary J. Plumb was the owner of the note at the time of her death is not of such convincing character or

degree as to have that effect.    Mistake, as claimed, in the execution of that document, signed by father and son and open to Niswander, who had it drawn, has not, under the light of the whole case, been established.    There is no such positive proof as is required to overthrow the plain admission by that writing that the note belonged to Mary J. Plumb's estate.    This admission, within a sealed instrument, was deliberately made.    It is clearly proved.    The execution and existence of that instrument is admitted.    Niswander had direct knowledge of its contents and purport.    The admission contained in it as aforesaid likewise binds him.    To give this admission in that writing a meaning wholly different from that which its language imports, a positive degree of proof is required.    Such degree of proof is lacking in this case.    Aside from the recitals of that writing, not satisfactorily explained, that the fund thereby dealt with was "received as belonging to M. J. Plumb," and that it was "left by M. J. Plumb, now deceased," it is indeed significant that W. C. Plumb should therein have released his right to the fund if he had no interest in it, as was true if the note belonged to D. S. Plumb; or that it should have been necessary for D. S. Plumb, if he was the owner of the note as it is claimed, thereby to acknowledge the amount he received as "in full of all claims against the said W. C. Plumb on account of the fund aforesaid." And also significant is it, taken in connection with this writing, that this father and son should have been disputing about the estate in a lawyer's office, the father at one time declaring the will of the wife's property to the son to be a forgery, and later, on the very day the note became due, entering into a distribution exactly in the proportions provided by statute, after obtaining the note from the depositary with whom they had mutually left it for safe-keeping, evidently until it should become due.    The endorsement of the note in blank by Mary J. Plumb in her lifetime is only a circumstance to be considered with the whole of the evidence.    Notes are often endorsed, and yet not actually transferred.    And the fully proved acts and declarations of D. S. Plumb in taking the writing to the creditor and imparting the information upon which this suit was begun, and the strong rebuttal of his excuse of drunkenness at the time, count mightily in the evidence.

The reference of the cause to a commissioner was appropriate.

It was essential to the end sought by the plaintiff and the petitioning creditor.

We affirm the decree, remanding the cause for the execution of the reference and such further proceedings as may be proper or as to equity may appertain.

*Affirmed.*