# CHARLESTON.

CHARLES E. BLUE *v*. HAZEL-ATLAS GLASS COMPANY

Submitted April 17, 1923.   Decided May 8, 1923.

1. APPEAL AND ERROR—*Supreme Court Can Review Action of Trial Court in Dismissing Bill Only by Appeal.*

   Where a demurrer of a defendant to a bill is sustained and the court dismisses the bill as, to the demurrant, this court can not, upon certificate under section 1, chapter 135, Code, review the action of the court; the order of dismissal being final can be reviewed only by appeal.  (p. 719).

2. SAME—*Order Striking Out Impertinent and Immaterial Portions of Bill Reviewable on Certificate.*

   Where on motion of a defendant the court strikes out of a bill certain portions for impertinence, which portions are not so material as to deprive plaintiff of the relief or part of the relief demanded, upon certificate, this court can review the propriety of the ruling of the trial court on such motion.  (p. 719).

3. SAME—*Order Striking Material Portion of Bill, Amounting to Dismissal Thereof, Cannot be Reviewed on Certificate.*

   But if the portion of the bill struck out is so material as to deny plaintiff his right to relief or part thereof, striking it out amounts to a dismissal of that part of plaintiff's claim; and the ruling of the trial court thereon can not be reviewed upon certificate.  (p. 724).

4. EQUITY—*Before Matter in Pleading is Stricken as Impertinent, its Objectionable Character Should Clearly Appear.*

   A court has undoubted right to expunge from a pleading matter which it deems impertinent; but this right should be exercised with caution, lest pertinent be expunged with the impertinent matter.  Before matter is struck out it ought clearly to appear to the court from every aspect of the case that the matter is impertinent.

5. DISCOVERY—*Bill for Discovery Held Sufficient.*

   A bill for discovery and final decree for the amount found due for royalties, which avers that plaintiff is the patentee and owner of a patent of a machine for making glassware; that defendant as his licensee thereunder for a number of years has been and is now making use of such patented machines of different sizes in the manufacture of its glass-ware;

that he does not know when defendant began the use thereof, or how long it has been using them; or how many or where; or the quantities of ware so made; and that a discovery of all such matters is indispensible to plaintiff's relief, is sufficient upon demurrer. (p. 724).

Certified Questions from Circuit Court, Ohio County.

Action by Charles E. Blue against the Hazel-Atlas Glass Company and J. C. Brady as its president and in his own right. The court sustained a demurrer to the bill interposed on behalf of J. C. Brady individually, and dismissed the action as to him in that capacity, and overruled the demurrer of defendant Hazel-Atlas Glass Company. On certified questions.

*Reversed in part, affirmed in part.*

*Geo. C. Beneke* and *J. M. Ritz,* for plaintiff.
*Hubbard & Hubbard,* for defendant.

MEREDITH, JUDGE:

Plaintiff filed his amended and supplemental bill against Hazel-Atlas Glass Company, a corporation, J. C. Brady as its president and in his own right, for discovery and an accounting for certain royalties alleged to be owing plaintiff by the company, due him under certain patent rights, and for a decree against the company for the amount found due on final accounting. The court sustained a demurrer to the bill, interposed on behalf of J. C. Brady individually, and dismissed it as to him in that capacity. The demurrer of Hazel-Atlas Glass Company was overruled. The company then moved the court to strike from the bill as immaterial paragraphs, I, II, III, IV, V, VI, and IX, except the averment in paragraph II that J. C. Brady is president of the defendant company, and except the last sentence of paragraph V and the last two sentences of paragraph VI, to which plaintiff objected, but the court sustained the motion and struck out each of the portions covered by the motion. The questions arising on the rulings of the court, on the joint application of the parties, are certified here for review.

Under the second paragraph, sec. 1, chap. 135, Code, what are the questions certified that we can consider?

First, the court sustained the demurrer of J. C. Brady individually and dismissed the bill as to him in that capacity. That was a final order in that respect and cannot be considered here except by appeal in the regular way. *Heater* v. *Lloyd,* 85 W. Va. 570, 102 S. E. 228.

Second, the court sustained the company's motion to strike out certain paragraphs and parts of certain other paragraphs and entered an order striking them from the bill. This in effect was the same as if the court had sustained defendant's demurrer to those particular portions of the bill and dismissed it as to those parts; but the matters referred to in those particular portions do not set up any independent claim for equitable relief. If they have any place or perform any office in the bill at all it is because of their bearing upon the single demand for relief and do not finally dispose of that demand; hence the order striking out the particular parts of the bill is not final nor is it appealable; the ruling of the circuit court in that respect, therefore, can be considered here on certificate. *Gulland* v. *Gulland,* 81 W. Va. 487, 94 S. E. 943.

Third, the sufficiency of the bill upon demurrer, of course, can be considered.

The bill by paragraphs in substance states:

I. That defendant, Hazel-Atlas Glass Company, was organized in 1902 or 1903 as a result of and for the purpose of combining four other corporations, to-wit, the Wheeling Hinge Company, which was originally engaged in making hinges but at the time of the merger was chiefly engaged in making metal caps for glass jars; the Hazel Glass Company, which was engaged in making glassware chiefly for preserver goods and pickle bottles; the Republic Glass Company, which was engaged in making glass tumblers; and the Atlas Glass Company, whose chief business was that of making fruit jars; that the latter company was organized by Charles E. Blue and other named persons, and when it was organized plaintiff was the owner of a number of patents for glass-making machines, and in consideration of the transfer of said patents as well as the improvements thereon which plaintiff might from time to time invent, discover or make, plaintiff was to

receive one-fifth of the capital stock of the Atlas Glass Company, and should the capital stock be increased he was to receive enough additional stock so that at all times he would be the owner of one-fifth of the capital stock of that company outstanding.

This paragraph was struck from the bill.

II.   That about 1902 or 1903 the four companies were consolidated under the name of Hazel-Atlas Glass Company by transferring the assets of each company to Hazel-Atlas Glass Company for its stock based on the appraised values of the assets of the four merged companies; that the four companies then distributed among their stockholders the stock so received so that all the stockholders of the four merged companies became stockholders in the Hazel-Atlas Glass Company; that plaintiff received as his share of stock 300 shares from the Atlas Glass Company and 100 shares from the Republic Glass Company; that Charles M. Brady was the first president of the Hazel-Atlas Glass Company and a director thereof for many years; W. S. Brady was its first vice president and a director thereof for many years; and J. C. Brady was its first secretary and treasurer and a director thereof and is now a director and also its president.

The court struck out all of this paragraph except the statement relative to J. C. Brady being the company's president.

III.   That plaintiff while quite young began working in a glass company of which Charles M. Brady was president, and since that time he has been closely associated with Charles M. Brady, W. S. Brady and J. C. Brady in business; that the companies in which he was interested with the Bradys were chiefly the Hazel Glass Company, Atlas Glass Company and the Republic Glass Company, and as to them he relied upon the business judgment and ability of the Bradys; that he assigned outright to Atlas Glass Company several valuable patents for glass-making machines and licensed to Hazel Glass Company the use of his important patents for glass-making machines; that in all his dealings with said Bradys, involving the right to use his patents, he reposed trust and

confidence in the Bradys and did not deal with them at arm's length.

This paragraph was struck from the bill.

IV.   That on December 27, 1900, plaintiff, with Louis F. Blue and Arthur G. Hubbard, made a contract with Hazel Glass Company which was to continue another contract between them for a time and finally superseded it on January 1, 1901, the new contract being filed as Exhibit No. 1.   The new contract provided under section 1 thereof that Hazel Glass Company would pay plaintiff and his associates certain royalties according to the sizes for certain articles of glassware which it was then manufacturing under patents controlled by them and that the minimum royalties under that section would be at least $6,000 per year; that plaintiff was the patentee of patents and Louis V. Blue and A. G. Hubbard were assignees of interests in two of them; that Hazel Glass Company paid the royalties as provided until that company was merged into Hazel-Atlas Glass Company, when Hazel-Atlas Glass Company acquired the contract as part of Hazel Glass Company's assets; that defendant company paid royalties under section 1 of the contract until patents described therein expired, which was in 1914; that the contract was assigned to defendant company and for a long time it has exercised the right of Hazel Glass Company thereunder; that the last named company has been dissolved.

This paragraph was also struck from the bill.

V.   That section 2 of the contract provides that if the first parties, plaintiff and his associates, succeed in manufacturing for Hazel Glass Company an automatic feeding machine which will require no more than one skilled and one unskilled laborer to operate and if it be accepted in writing by Hazel Glass Company it will pay additional royalties as provided in section 2, and will otherwise comply with its covenants in that section.   These covenants, not pleaded other than as just stated, require the company to pay an additional royalty of 2c per gross on articles up to and including 16 ounces capacity and 5c per gross on articles over and above 16 ounces capacity and 5c per gross on arti-

cles over and above 16 ounces capacity, with a guaranteed
minimum royalty of $6,000 annually under section 2, the
minimum provision, however, not to go into effect until the
second year of working the machine. It is alleged that sec-
tion 3 of the contract provides that if the first parties should
manufacture for Hazel Glass Company an automatic ma-
chine for making glassware that will require not more than
one unskilled laborer to operate and if it be accepted by the
company in writing it agreed to pay the royalty specified in
section 3 and to keep the covenants therein contained. These
covenants, which were not otherwise pleaded than as stated
provide that if such machine be manufactured and accepted
by Hazel Glass Company it will pay the first parties a royal-
ty of 4c per gross on all articles up to and including 16 ounces
capacity, a royalty of 10c per gross on all articles over and
above 16 ounces capacity, and that it would guarantee a
minimum royalty for any year for articles manufactured
under section 3 of $20,000; provided, however, that these
royalties and minimum guarantee should take the place and
be in lieu of the royalties and guarantee provided under sec-
tion 1 and 2, and provded further that the company shall
have accepted in writing and have had in operation at least
seven of these machines for a period of one year before the
minimum guarantee of $20,000 should be effective, and pro-
vided also that the minimum guarantee of $20,000 per year
should continue for a period of five years, after which period
the minimum guarantee might be discontinued or con-
tinued at the company's option. This paragraph of the bill
also alleges that plaintiff has manufactured a machine that
fulfils all the requirements of sections 2 and 3 of the con-
tract, has had it patented as hereinafter stated and the ma-
chines have been tried and accepted and are being used by
Hazel-Atlas Glass Company.

All of this paragraph was struck out except the state-
ment that plaintiff had manufactured a machine that met
the requirements of sections 2 and 3, had obtained a patent
therefor and defendant had tried, accepted, used and is now
using it.

VI. That when the contract was executed plaintiff had

roughly conceived the idea of a devices or a machine that would answer the requirements of section 2 and 3 of the contract, and shortly thereafter he set about to invent and produce such machine or machines. On March 26, 1903, he filed his application with the United States patent office for a patent for a machine which substantially answered such requirements and was issued a patent therefor on January 9, 1906. A copy of the patent is purported to be exhibited with the bill as Exhibit No. 2, though it was not with the papers sent here.

The first averment of this paragraph was struck out.

VII. to XI. These paragraphs contain averments to the effect that in 1903 plaintiff had manufactured a machine for the manufacture of glassware which was turned over to defendant, Hazel-Atlas Glas Company, as assignee of the contract; that that company tried and tested the machine and found it was commercially practicable and fulfilled the requirements of the contract; that this is the machine covered by patent plaintiff's Exhibit No. 2; that in 1907 one Brooke obtained a patent for severing a continuous flowing stream of glass, without disclosing any practical means in the patent which severed the stream; as plaintiff recollects the Brooke patent was issued after plaintiff had applied for his patent; to prevent questions of infringement arising plaintiff obtained an option of purchasing the Brooke patent, which fact was made known to defendant company. It was then tentatively agreed between plaintiff and defendant company that if he would release his option defendant would secure a license to use the Brooke patent. About this time defendant began negotiations for modification of the royalties provided under the contract, reducing the royalties in stated amounts, but the agreement was never executed, though plaintiff is only claiming the lesser royalty as provided by the modification; that plaintiff performed his tentative agreement and did not purchase the Brooke patent but released his option thereon; defendant obtained a license from the owner to use the Brooke patent and that it afterwards used plaintiff's machine for making glassware, has continued to use it and is still using it; that it then and there became a licensee under

plaintiff's patent and is liable on its covenants in the contract, for royalties; that plaintiff does not know how many of plaintiff's machines it has used or is now using; that he does not know and cannot ascertain how much of said glassware defendant has manufactured by the use of plaintiff's machines nor the relative sizes of the ware so manufactured; that a discovery thereof is indispensable to the plaintiff to afford him relief in this suit or any suit or action for recovery of the royalties owing him. Plaintiff avers in paragraph IX that Louis V. Blue and A. G. Hubbard have no interest in his patent or the machine and device covered thereby nor in the royalties owing to him, but this averment was struck out by the court. The bill closes with a prayer for discovery from the defendant showing the date the defendant company began to use his machines, the amount and sizes of the ware manufactured by the use of the machines up to and including the year 1921 and the places where the machine or machines were used, and for a decree for the royalties which may be found due.

We will now take up the two questions certified which can be considered.

First. Was the court's ruling correct in striking out the various portions of the bill referred to? At first we were disposed to hold that we could not consider this question because the matters have already been struck out. But as the relief sought is not wholly dependent upon the matter struck out the order is not final nor appealable; the question arises upon the face of the bill, and therefore comes within the terms of sec. 1, chap. 135, Code, providing for the certification of such questions for review. If the matters struck out were so material as to deprive plaintiff of his right to a relief we could not review the action of the court thereon upon certificate. These parts of the bill were struck out because impertinent, that is, because of their immateriality in the view of the trial court. Some of them, so far as we can now see, may be immaterial; the statements of fact are loosely drawn. Plaintiff takes many words in coming to the point, but we cannot say that all the statements struck out have no real bearing on the case. It seems to us that

particularly paragraph IV, which exhibits the contract and states that defendant has exercised under it the rights of the Hazel Glass Company, is germane to the purposes of the bill. While plaintiff's contract was not made with defendant, yet defendant, according to the bill, took an assignment of the Hazel Glass Company's rights and assumed its liabilities under the contract. As we interpret the bill it is based for the most part upon this contract. By striking out paragraph IV the court struck out the part exhibiting the contract. Were it not for other parts of the bill, not struck out, which refer to it, the contract could not now be considered at all. This well illustrates the danger of striking out matter because of impertinence, and for that reason the courts are slow to strike out impertinent matter. As was said in *Dodd* v. *Wilkinson*, 42 N. J. Eq. 647:

> "The court, in cases of impertinence, ought, before expunging the matter alleged to be impertinent, to be especially clear that it is such as ought to be struck out of the record, for this reason: that the error on the one side is irremediable, on the other, not. If the court strikes it out of the record it is gone, and the party may have no opportunity of placing it there again; whereas, if it is left on the record, and is prolix or oppressive, the court, at the hearing of the cause, has power to set the matter right in point of costs."

We think that statement has peculiar application here. The court cannot, in advance of the hearing, always tell whether matter is pertinent or not. While the court has undoubted right to strike from a bill matter which it deem impertinent or scandalous, yet the adjudged cases show that this right is rarely exercised. We are of opinion that in this case the matters referred to should have been left in the bill; it is difficult to sift the impertinent from the pertinent. Of course the plaintiff will not be permitted to pry into the business of the defendant as to matters in which plaintiff has no interest; but it is better to await final hearing rather than in any way to prejudice the plaintiff's rights by striking out matters which his counsel evidently considered pertinent and

material, otherwise the matters would not have been pleaded. In our view of the case, paragraph IV is pertinent, and also paragraph IX, as that paragraph discloses why Louis V. Blue and Arthur G. Hubbard are not made parties, a proper statement and also a necessary one, if the suit is based on the contract to which they were parties. We can not see the pertinence or materiality of some of the other averments, but we can see no harm to defendant by permitting them also to remain in the bill. The bill advises the defendant of plaintiff's claim; the matters that have no bearing on the issues need not be answered. The court has full control of the question of costs and if unnecessary costs are caused by reason of immaterial averments in the bill, the court should unhesitatingly require plaintiff to pay them.

We are disposed to hold that the order striking out the various parts is erroneous, rather than to undertake a further separation of the material from the immaterial. To hold otherwise might do plaintiff an injustice which we can not foresee, and we do not think it will prejudice the defendant.

Second. Is the bill sufficient? It is not a bill for discovery only, but it also asks for relief. We think the bill sufficiently states a case. As was said in *Dudley* v. *Niswander,* 65 W. Va. 461, 64 S. E. 745, "Equity has jurisdiction of a bill seeking to substitute an equitable for a legal forum when there is a prayer for discovery and there are averments showing the indispensibility thereof." See also: *Prewett* v. *Bank,* 66 W. Va. 184, 66 S. E. 231; *Thompson* v. *Whitaker Iron Co.,* 23 S. E. 795; *Rees* v. *Emmon Coal Mining C.,* 88 W. Va. 4, 106 S. E. 247. The bill shows that defendant has been and is now using the machine patented by him in its business of making glassware; but when it began using the machines, or how long it has been using them, or how many, or where, he avers he does not know; nor does he know the sizes of the various kinds of ware that have been made by the use of the machines, nor the various quantities made. All this knowledge is peculiarly within defendant's possession, and plaintiff alleges that a discovery is indispensible to his relief. Presumably, it has carefully kept its documents and accounts and can readily furnish the

information. Nor do we think the bill demurrable because of laches. We do not know when defendant began using the machines, whether fifteen years or five years ago. Besides, the contract appears to be a continuing one. There is nothing on the face of the bill to indicate that there has been any loss of evidence by reason of the delay in bringing suit or that defendant has been prejudiced thereby.

We are therefore of opinion to reverse the ruling of the circuit court in striking out the several portions of plaintiff's bill and to affirm its action in overruling the defendant company's demurrer to the bill.

*Reversed in part; affirmed in part.*