Moncure, P.
delivered the opinion of the court. After stating the case he proceeded:
In the petition of appeal various errors in the decree are assigned, but it will be necessary to notice only a few of them. The counsel for the appellants contended that the State court, and not the Federal court, had jurisdiction of the controversy, and in this view we concur with the counsel. It sufficiently appears in the record that before the appointment of Camp as receiver, and while he was acting as trustee, he transferred the note and bonds to Burke, Herbert & Co., whose duty it thenceforward became to collect the note, and make the- *260 bonds available as collateral security, if necessary, for that purpose. They were invested with the title to the subject, for their own benefit, to a certain extent, and for the benefit of the trustee, Camp, or the creditors of the bank, as to the residue. They were entitled to pursue, in their own name, all the remedies which existed to make the claim available, and they had a right to do so as well after as before the appointment of Camp as receiver. That appointment was in subordination to the transfer to them, which was prior in time and paramount in right. If such appointment had been prior and paramount to the "transfer to them, then we would have concurred with the Circuit court in considering that the remedy of the appellants, if entitled to any, was by an application to the Federal and not to the State court, and that on that ground the decree was rightly rendered. But differing as we do with, the Circuit court in that respect, and regarding the controversy as a proper subject of litigation in the State courts, we proceed, in that view, to consider the errors assigned in the petition, or such of them as seem to be material.
The counsel for the appellants very properly placed no reliance on, if he did not expressly waive, such of the assignments of error as are plainly untenable. For instance, he placed no reliance on the first assignment of error, “That it was the duty of Camp, as trustee of the bank, to have received the notes of the bank in payment of the petitioner’s negotiable note due to the;a bank.” That it was not his duty to have done so, was expressly decided by this court in the cases cited by the counsel of the appellee, Camp, of Exchange Bank of Virginia v. Knox, &c., and Farmers Bank of Virginia v. Anderson & Co., 19 Gratt. 739. It is proper to state, however, that those cases were decided after the appeal was applied for in this case. For did he place any reliance on the fourth assignment of error, “That the said note is invalid and inoperative, the same having been made at *261 Alexandria whilst in the Federal lines, and payable to a person residing in the Confederate lines.” This was a mere renewal of a note which had been long running at bank. It was merely the evidence of the-debt, which remained the same debt, notwithstanding the renewal of the note from time to time. The appellant would have owed the debt if the last renewal had never been given, and would owe it if that renewal could be avoided. As the counsel for the appellee, Camp, rightly argued, “The note was discounted by the branch of said bank at Alexandria, aud was held by the said branch as the authorized agent of the mother bank for collection. It so remained until the close of the war. Ward v. Smith, 7 Wall. U. S. R. 447.”
But we will proceed at once to consider the only assignments of error relied on by the counsel for the appellants. They are the fifth and the sixth.
The 5th is in these words: “There being no special agreement to confer on the bank the power to sell the security, it was not competent for the bank to sell, much less Burke, Herbert & Co.”
In regard to the right of a pawnee or pledgee to make the pawn or pledge available, the law is thus laid down in 2 Kent’s Com. 582, marg.: “ The English law now is that after the debt is due the pawnee has the election of two remedies. He may file a bill in chancery, and have a judicial sale under a regular decree of foreclosure; and this has frequently been done in the case of stock, bonds, plate and other chattels, pledged for the payment of the debt. But the pawnee is not now bound to wait for a sale under a decree of foreclosure, as he is in the case of a mortgage of land (though Lord Chancellor Harcourt once held otherwise), aud he may sell without judicial process, upon giving reasonable notice to the debtor to redeem.” To the same effect is the law laid down in 2 Story’s Eq. § 1008. In ordinary cases no special agreement is necessary to confer on the pledgee *262 power to sell the property pledged. The power is, ordinarily, incident to the pledge. There are, however, exceptions to the general rule. The case of Wheeler v. Newbould, 16 New York R. 892, cited in the petition, is a case in which there was such an exception. There it was held that “the pledge of commercial paper as security for a loan of money does not, in the absence of a special power for that purpose, authorize the pledgee, upon the non-payment of the debt, and upon notice to the pledger, to sell the securities pledged, either at public or private sale; but he is bound to hold and collect the same as they become due, and apply the money to the payment of the loan.” The natural and proper mode of making such a security available was by collecting the money, and not by selling the security. The notes pledged in that case were due at short periods, and it could not have been intended by the parties that they might be sold by the pledgee, if the principal debt were not paid at maturity. But the same reason does not apply to property which can be made available only by a sale, or to make which available a sale is the proper and legitimate mode. In this case the pledge was of coupon county bonds, which are an ordiuary subject of sale, and the proper and legitimate, if not the only, mode of making them available is by a sale. In Wheeler v. Newbould, the existence of the ordinary rule as laid down in Kent and Story supra, is admitted, and those authorities are referred to, and the cases of Willoughby v. Comstock, 3 Hill, N. Y. R. 389, and Dyckers v. Allen, 7 Id. 497, are cited, in which the ordinary rule was applied to pledges of stock.
We, therefore, think it was competent for the bank to sell the bonds in this case, or would have been if the bank had not transferred them to Burke, Herbert & Co. We also think that it was competent for Burke, Herbert & Co., as transferees of the note and bonds, to make the sale.
*263 It seems to have been conceded by the counsel for the appellants, in argument, that the Exchange Bank would have had a right to sell the bonds, and also that the assignment of the note carried with it an assignment of the pledge. In this case, the bonds were expressly transferred along with the note. But the counsel argued that the original pledgee was, in effect, a trustee, who could not delegate his trust, and therefore, that an assiguee of the debt is not a trustee, and cannot sell the property pledged, though he may have it sold under a decree of a court of chancery. The counsel admitted that he could find no authority to sustain this view. The power to sell property pledged for the security of a debt does not arise from any peculiar trust reposed in the original creditor, but is an incident to the pledge, and a part of the security of the debt. It follows the debt into whosesoever hands it may come. That no authority can be found, or was not found, by the learned counsel to sustain his view, goes far, very far, to show that it is unsound. In the commercial world it must often occur that debts secured by a pledge are assigned, and that the assignee exercises the ordinary right of selling the subject of the pledge on the non-payment of the debt. We have not sought for cases of this kind, but doubt not there are many in the books. If there are not, it is doubtless because the right has never before been questioned. On principal, we think there is no doubt.
The sixth assignment of error is in these words: “Even if the creditors had authority to sell without judicial proceedings, personal notice to redeem, and of the time, place and manner of the intended sale, must be given to the pledger. Ko such notice was given. 16 New York R. 392 ”
Certainly before a sale can be made by the pledgee, without judicial proceedings, he must give reasonable notice to the debtor to redeem. Such notice is iudis *264 pensable. 2 Kent’s Com. 582, marg.; Stearns v. Marsh, 4 Denio’s R. 227. Such notice was given in this case. So also reasonable notice must be given to the debtor 0f the time and place of sale. Id. 2 Story’s Eq. § 1008-“The creditor will be held at his peril to deal fairly and with the pledge, both as to the time of the notice and the manner of the sale.” 2 Kent’s Com. supra. It does not appear that in this case any formal notice of the time and place of sale was served upon or given to-the, debtor, but it does appear that the debtor had actual notice thereof, and that is sufficient. It is equivalent to the most formal notice. The only object of requiring notice to be given in such a case is to inform the debtor of the time and place of sale; and when he is already otherwise fully informed on the subject, to require a further and more formal notice to be given him is to require a vain thing. The case is not like a legal proceeding, in which service, or waiver of notice, should appear in the record. Here the whole matter is in pais, and the question is, Hid the debtor have actual notice of the time and place of sale? The safest course is to have a formal written notice served upon him, for then the fact of notice can be easily proved. If this safe course-be not pursued, the creditor must, at his peril, be prepared to prove otherwise that the debtor was informed of the time and place of sale a reasonable time before the same was to take place. Here there can be no doubt about the fact that the debtor had such information-The written notice to redeem was very specific, and notified the debtor that unless payment of the debt should be made on or before a certain day, the creditor would thereafter proceed to sell the bonds and apply the proceeds to the payment of the debt. The debtor, not having complied with this requisition to redeem, had every reason to expect that his failure would soon be followed by a sale, according to the notice. Accordingly, early in December following, the very next month, *265 a sale of the bonds was advertised in the Alexandria Gazette, a newspaper published in the city which was the chief terminus of the road of the Alexandria, Loudoun & Hampshire Railroad Company, and the place, no doubt, where the principal office of the company was located and their chief officers resided. The day fixed for the sale was the 15th of November, more than a month after the advertisement was first inserted in the newspaper, and such insertion was to be continued weekly until the day of sale. If the fact of actual notice could not be inferred from these strong circumstances, there is other and conclusive evidence in the record of such actual notice. The injunction was obtained on the 8th day of January 1870, one week before the day fixed for the sale, and a copy of the advertisement is filed as an exhibit with the bill, thus conclusively showing that the plaintiffs were fully informed of the time and place of sale, just as much so as if a copy of the advertisement had been served upon them.
We are, therefore, of opinion that there is no error in the decree, and that it ought to be affirmed.
Decree arrirmed.