# Richmond.

## WATKINS V. STEWART AND ALS.

### December 6th, 1883.

1. **PERSONAL REPRESENTATIVES**—*Liability.*—It is well settled that courts of equity will not hold fiduciaries liable for losses incurred in managing the trust funds where they have acted in good faith, in the exercise of a reasonable discretion, and as they would probably have acted had the funds been their own.

2. **IDEM**—*Idem.*—Among the assets which came into the hands of an administrator in 1875, were $6,000, of W & O railroad bonds, worth at the time $4,200, which were paying a good rate of interest. Two of the three legatees present, the fourth having been absent for seven years and supposed to be dead, requested that these bonds be not sold as it was thought they would appreciate. Administrator held then until 1877, when by the railroad's sudden collapse, they become worthless.

HELD :

Administrator is not liable for the loss.

3. **IDEM**—*Idem.*—Among the assets was a note of same company for $4,000, secured by pledge of $12,000 of said bonds ; administrator repeatedly demanded payment, and was assured it should be paid. The company was then paying interest regularly—by its failure this sum was lost also.

HELD :

Under the circumstances administrator should not be held liable.

Appeal from decree of corporation court of city of Alexandria, rendered 13th October, 1880, in cause wherein Virginia Stewart is complainant and J. C. O'Neal, administrator of John T. Evans, Sr., deceased ; Mary C. Watkins, and others, are defendants.

The object of this suit was to hold the administrator accountable for $6,000 of the bonds of the W. & O. Railroad

Company and a note for $4,000 on said company and se-
cured by $12,000 of said bonds, which in 1875 were ap-
praised at seventy cents in the dollar, but which, by sudden
default of the company, became entirely worthless in 1877.
The court below exonerated the administrator from lia-
bility, and Mary C. Watkins, one of the distributees, ob-
tained an appeal to this court.

Opinion states the facts.

*John M. Johnson,* for the appellant.

*S. F. Beach* and *H. O. Claughton,* for the appellees.

HINTON, J., delivered the opinion of the court.

Some time prior to the 16th of October, 1875, John T.
Evans, Sr., died intestate, whereupon J. C. O'Neal qualified
as his administrator, and promptly returned and had re-
corded the inventory and appraisement required by law.

On the 2d of October, 1879, Virginia Stewart, a daughter
and distributee of the said Evans, instituted this suit. In
her bill she alleges that her late father had four children,
amongst whom she includes the appellant, Mary C. Wat-
kins, and a son, John T. Evans, Jr., who had not been heard
of for seven years, and who was believed to be dead; that
the administrator had made a partial distribution of the
personal estate in his hands, but retained one-fourth part
thereof, the distributive share of the said John T. Evans,
Jr., as if he were alive. It then avers that the plaintiff
and her two sisters are willing to give the refunding bonds
provided by law, and prays that the administrator may be
decreed to pay her one-third of the distributive share of
the said John T. Evans, Jr., on the terms prescribed by the
statute in such cases made and provided. In the progress
of the cause the administrator was directed to settle an

administration account. The commissioner with his report returns two accounts, in one of which the administrator is charged with the appraised value of $6,000 of Washington and Ohio R. R. Co.'s bonds and the note for $4,000; but in the other he is not, and this last mentioned account the court, by a decree entered on the 30th October, 1880, confirmed. The error assigned here, and the only question we have to consider, is the failure of the court below to charge these two items against the administrator.

As to the propriety of the exclusion of the first item— namely, the $6,0000 of W. & O. R. R. Co's bonds—I have very little doubt. The evidence, returned by the commissioner with his report and account, shows that the administrator had been repeatedly requested by two of the distributees and their husbands not to sell these bonds; that they were paying a good rate of interest; and that the administrator and the two above mentioned distributees thought they were likely to appreciate in value. Prompted by these considerations, the administrator held on to these bonds until the collapse of the road in April, 1877, when they became valueless. Under such circumstances, the administrator cannot be held liable. In *Marsden* v. *Kent*, 5 Law Rep., Chy. Div., 598, a stronger case than the one under review, the executors were held not to be liable. In that case James, L. J., said: "The executors were entitled to wait twelve months before they converted them," meaning the bonds " At that time the market had fallen. They hoped it would rise, and therefore delayed the sale, a course of proceeding which has resulted in a loss. The executors acted with no view of obtaining any benefit to themselves; . . . they appear to have acted honestly with a view to what they thought beneficial to everybody interested. They received the dividends during the twelve months, and of that the . . legatees have the benefit. The legatees were *sui juris* competent to direct what should

be done about the property. One of them went to the executors to ask them to sell. The executors were not bound to act on his judgment; he should have called on the other legatees and asked them to join in an application to the executors to sell. If they had all concurred in such an application, the executors would no doubt have complied with it, and if a majority had so applied, it is probable that the executors would at once have sold. The executors, in the honest exercise of their discretion, thought it more prudent to wait for a rise, and we think they ought not to suffer because it turns out that they committed an error of judgment. . . . It would be very hard upon executors who have been saddled with property of this speculative kind, and have endeavored to do their duty honestly, if they were to be fixed with a loss arising from their not having taken what, as is proved by the result, would have been the best course." See also *Buxton* v. *Buxton*, 1 My. and Cr. 80.

Upon the point of the exclusion of the note for $4,000, and which was secured by a pledge of $8,000, at least, of the same railroad company's bonds, I have very much more difficulty. Without doubt courts of equity have been accustomed, from the time of Lord Hardwicke down to the present moment, to look with indulgence upon the acts of trustees and other fiduciaries, and have shown a manifest disinclination to hold them personally responsible for losses occurring in the management of the trust funds whenever it has appeared that the trustee or other fiduciary has acted in good faith in the exercise of a fair discretion, and in the same manner in which he would probably have acted if the subject had been his own property. *Ex parte Belchier*, 1 Amb. R. 219; *Knight* v. *Lord Plymouth*, 3 Atk. R. 480; *Powell* v. *Evans*, 5 Ves. R. 839; *Thompson* v. *Brown*, 4 Johns. Ch. R. 619; *Elliott* v. *Carter*, 9 Gratt. 548.

And where there are no circumstances of suspicion, such

as the failure to make out an inventory, or to have an appraisement of the estate, nor any evidence of *mala fides* on the part of such fiduciaries, I think, to adopt the language of this court in *Elliott* v. *Carter and als., supra,* "that they should be treated with tenderness, and due caution should be taken not to hold them liable upon slight or uncertain grounds." *Southall's Adm'r* v. *Taylor and als.,* 14 Gratt. 274.

Now, here the record shows perfect good faith on the part of this administrator; that this investment was made by the testator, and not by him; 2 Bro. C. C. (Perkins' ed.), p. 130, n. 3; that the administrator had called upon the president of the road a number of times and demanded payment of the note, who as often promised that it should certainly be paid; and that whilst he was relying on these promises, the road, which had theretofore been paying its interest, suddenly defaulted, was put into the hands of a receiver and the debt was lost. In view of these facts, and against my first impressions, I think it would be too harsh, and not in accord with the general tenor of the decisions in cases of this kind, for us to hold this administrator liable, even although it seems probable from the testimony that the debt might have been made if the bonds, which were deposited to secure it, had been sold soon after the qualification of the administrator. *Burke and als.* v. *A. L. H. R. R. Co.,* 22 Gratt. 254; 2 Lom. on Ex'ors, 478, par. 5.

The decree of the corporation court of the city of Alexandria, appealed from, must be affirmed.

FAUNTLEROY, J., dissented.

DECREE AFFIRMED.