*In re* CHOATE'S ESTATE

BONINE *v.* GAGE.

1. ESTATES OF DECEDENTS—EXECUTORS AND ADMINISTRATORS—PERSONAL PROPERTY—CREDITS ON ACCOUNTING.

Where corporate stock belonging to an estate came into the possession of a trustee in bankruptcy of a bank in which the executor kept the property of the estate, and the trustee unlawfully retained the stock, but after the hearing of his final

accounting the executor recovered possession of it, he should be credited with the appraised value thereof, in the absence of evidence showing that he had neglected to sell it when a sale ought to have been made, or had attempted to convert it to his own use.

2. COSTS—EXECUTORS AND ADMINISTRATORS.

Because of his neglect to regain possession of the stock belonging to decedent, unlawfully retained by a third party, until after appeal to the Supreme Court, the executor whose duty it was to secure the same should not recover costs.

Appeal from Cass; Des Voignes, J. Submitted June 15, 1910. (Docket No. 64.) Decided May 8, 1911.

Ira B. Gage presented his final account as executor of the estate of Nelson F. Choate, deceased. From an order of the probate court charging the executor with the value of certain stock, both parties appealed to the circuit court, where the order was modified and affirmed. Both parties appeal. Reversed.

*M. L. Howell,* for appellant Bonine.

*James H. Kinnane* and *Dallas Boudeman,* for cross-appellants Gage and Illinois Surety Co.

MOORE, J. This case involves the accounting of Mr. Ira B. Gage as executor of the estate of Nelson Choate, deceased. Mr. Choate was one of the partners in the copartnership bank known as the City Bank of Dowagiac. Mr. Gage was also one of such copartners. Mr. Choate owned 400 shares of the stock of the Dowagiac Manufacturing Company, which was a corporation organized under the laws of Michigan. He had owned this stock for many years. He died in February, 1906. In his will he named Mr. Gage as his executor, and he was on March 23, 1906, appointed as such executor by the probate court of Cass county. Mr. Gage gave an executor's bond with the Illinois Surety Company as surety. In making up the inventory of Mr. Choate's property, the stock of the Dowagiac Manufacturing Company was put down and

appraised as of the value of $10,000. This stock remained in the name of Mr. Choate, and is still in his name. It came into the possession of Mr. Gage as executor of the estate, and he kept it with his private papers in the vault of the City Bank of Dowagiac, of which he was cashier. That bank went into bankruptcy in February, 1908. Mr. Gage having neglected to take the certificates of stock away from the bank vault, they came into the possession of Charles Kimmerle, as trustee in bankruptcy of Mr. Gage, and of the copartnership of which he was a member. The main controversy of the parties in this cause is concerning this stock. Mr. Gage (after he became a bankrupt) resigned his executorship, and presented before the probate court his final account for settlement.

To this account objections were filed by the administrator *de bonis non*, the important one of which was as follows:

"(1) The Dowagiac Manufacturing Company stock consisting of 400 shares of the par value of $25 each was appraised at $10,000, and the said Ira B. Gage, executor, has charged himself with that amount and has the same on hand unsold when, in fact, for more than one year following the appointment of said Gage, executor, said stock was worth at least $40,000, and could and should have been sold for substantially that price, but the said executor neglected to sell, and so neglected to become liable for all loss occasioned by its depreciation, and that the same is worth not to exceed $7,500; and the said Wilbur G. Bonine, administrator, as aforesaid, claims that the said Ira B. Gage should be charged in said account with the sum of $40,000, instead of with the sum of $10,000 for said stock, and should be credited (upon the delivery thereof to said Bonine) with the present value thereof, to wit, $7,500."

The record shows an offer to produce the stock in the probate court, but we do not discover that it was in fact produced. The probate court did not credit Mr. Gage with the stock, but found the following:

" The debits of said account should be as follows:

Received from the Bankers' Life Ins. Co., of
   the City of New York, $10,000, less rebate of
   $1,707 ........................................... $8,293 00
Received for 85 shares of City Bank stock ....... 8,500 00
Cash not included in inventory .................. 269 70
Dividend on bank stock .......................... 212 50
Received on sale of lot No. 16 King's Add.
   to Dowagiac ................................... 275 00
Gas range sold .................................. 24 70
Harness sold .................................... 5 00
Coal sold Dr. Myers ............................. 4 25
Rent received of Dr. Myers ...................... 60 00
Invalid chair sold .............................. 30 00
400 shares of stock of Dowagiac Mfg. Co. ........ 10,000 00
                                                     ————————
Making a total of receipts of ................... $27,674 15

"Credits per vouchers, plus executor's commission, amount to $29,336.13. Showing an excess of disbursements over receipts of $1,661.98.

"It is therefore ordered that said account be and the same is changed to read as above and allowed accordingly. It is further ordered that the said Ira B. Gage be reimbursed by the administrator *de bonis non* of said estate to the amount of $1,661.98 as soon as practicable."

From this disposition of the account both parties appealed—the administrator *de bonis non,* because:

"The said Ira B. Gage should be charged in said account with the said stock at its full value at the time the same should have been sold by him, to wit: He should be charged the sum of $40,000 and be held to have converted the said stock to his own use."

And Mr. Gage and the Illinois Surety Company because:

"*Second.* That upon the settling of the said executor's final account the said court should have given him credit in specie for said 400 shares of stock of said Dowagiac Manufacturing Company at the sum of $10,000, and should have ordered and directed the same to be delivered to the administrator *de bonis non* of said estate."

In the circuit court, the case was tried before the circuit judge, who made findings of fact and law. Proposed

amendments upon each side were asked and refused, and exceptions duly taken, and both parties have appealed to this court.

In the findings of the circuit judge appeared the following:

"The Dowagiac Manufacturing Company was a corporation organized under the laws of the State of Michigan some years prior to 1904, having a capital stock of $50,000, divided into shares having a par value of $25 each, and this stock was owned in the following proportions: C. Eugene Lyle, who was a brother of Frank W. Lyle, was the owner of 800 shares. Frank W. Lyle was the owner of 400 shares. Nelson F. Choate was the owner of 400 shares. Will F. Hoyt and Charles L. Fowle were each the owners of 200 shares. Ira B. Gage had been a stockholder in this Dowagiac Manufacturing Company some years before, but was not interested in it as a stockholder for some years prior to the liquidation of the City Bank. * * *

"The copartnership formed to succeed the City Bank took the name of the City Bank of Dowagiac, Lyle, Gage & Co., Bankers. Its officers and managers were Frank W. Lyle, Nelson F. Choate, and Ira B. Gage. Leon Lyle was a son of Frank W. Lyle, and was assistant cashier. During the continuance of this partnership, the indebtedness of Frank W. Lyle to it, which had been taken over from the corporation doing a banking business by the partnership, was considerably increased, until, at the death of Choate, he owed the bank perhaps $100,000. The indebtedness of Gage and Choate was at least not reduced, and none of these indebtednesses, except $10,000 of the indebtedness of Choate, was in any way secured, and no security was ever demanded by any of the partners from the others.

"Nelson F. Choate died on or about the————day of February, 1906, leaving a last will and testament. * * * He left surviving him two minor children, Ruth and Gilberta, who were his sole heirs. On the 23d day of March, 1906, his will was admitted to probate in the probate court for the county of Cass, and Ira B. Gage qualified as executor, and on or about the 29th day of March, 1906, filed his bond as such executor with the Illinois Surety Company as his surety. This bond was for the sum of $30,000. * * * On the 14th day of April, 1906,

the said Gage filed an inventory and appraisement of the property of the estate of Nelson F. Choate. * * * The 400 shares of stock in the Dowagiac Manufacturing Company, as appears by this appraisement, was appraised at its par value, but both the executor, Ira B. Gage, and the appraisers, knew that it was worth at least $12,500. On the 27th of March, 1906, the said Ira B. Gage was appointed the guardian of the minor children, Ruth and Gilberta Choate, and the Illinois Surety Company became his surety as such guardian. * * *

"On about the 4th day of May, 1906, and after the death of Choate, the new partnership was formed to engage in the banking business under the same name, but with a capital stock of $50,000, $30,000 of which was held by Frank W. Lyle, $12,000 of which was held by the said Ira B. Gage and the remainder by Leon Lyle and other relatives of Frank W. Lyle. The managers of the copartnership were Frank W. Lyle, Ira B. Gage, and Leon Lyle. The bank continued in business until the 8th day of February, 1908, when it failed and bankruptcy proceedings were instituted against it, and the partners were all declared bankrupt and a trustee was appointed who took and still retains possession of their assets. * * *

"The ownership of stock in the manufacturing company by Frank W. Lyle and by Nelson F. Choate during his lifetime tended to give confidence to the customers of the bank in its solvency, and a sale by them of their holdings or a sale of the Choate stock after his death by the executor, unless the same was purchased by some then stockholder of the Dowagiac Manufacturing Company, would have been regarded as a somewhat unfavorable indication by the public. At the time of Choate's death, the Dowagiac Manufacturing Company had a judgment of some $80,000 against the McSherry Company, an Ohio corporation, which was not listed among its assets, and formed no part of any of the reports to the secretary of State, and was not considered in determining the value of the stock at the time of Choate's death. The business of the Dowagiac Manufacturing Company, however, had fallen off to some extent, but the depression was regarded as temporary, and did not, in fact, very seriously affect it, except that it did not earn sufficient to make any subsequent dividends. * * *.

"Gage attended some of the meetings of the officers of the Dowagiac Manufacturing Company who were all

its stockholders, heard them discussing as to the prospects and financial condition of the company, but did not disclose or state to the court, and it does not in any way appear what was said at these meetings, or what conclusion was reached or what inference drawn as to the value of the stock or as to its tendency upwards or downwards. He informed the other stockholders that he would sell the Choate stock to them, but they informed him that they were not able to handle it, but on one occasion offered to exchange for it some real estate in Dakota, which was paying 6 per cent. on $18,000 or $20,000, but which was in fact, subsequently sold for $9,000. He never received any other offer for it, and never offered it to any other person, and never made public his desire, intention, or willingness to sell it, and it was not known by the public that it was for sale or that it could be purchased.

"Shortly after Choate's death, the judgment against the McSherry Company of over $80,000 was reduced by some judicial proceedings to the amount of about $40,000, and after the failure of the bank in February, 1908, and on or about the 20th day of that month the United States circuit court of appeals for the sixth circuit reduced this judgment to about $1,700. Mr. Gage testified that this reduction to $1,700 was made by the court before the failure of the Dowagiac bank, but the report of the case found in [*McSherry Manfg. Co.* v. *Dowagiac Manfg. Co.*] 160 Fed. 948 [89 C. C. A. 26], shows that he was mistaken as to this. Before Choate's death, he had borrowed some money of outside people, and had hypothecated as collateral to his notes some of his certificates of stock in the Dowagiac Manufacturing Company. He had only a small balance of $269.70 to his credit at the time of his death. * * *

"C. H. Kimmerle was elected trustee in the bankruptcy shortly after the failure of the banking copartnership, and took possession of all the assets, including the stock owned by the Choate estate in the Dowagiac Manufacturing Company, which he still holds under the claim of right, and which he refuses and has refused to deliver up to any person. * * *

"The court finds that in truth and in fact the said Ira B. Gage was negligent and inattentive to his duties as executor, that he made no proper or reasonable effort to dispose of the stock when it could have been disposed of, and that he was so negligent and careless that he ought

to be held liable to the estate for the stock if he has suffered it to get beyond the reach of the administrator, or for its depreciation in value if it has depreciated. Upon the failure of the City Bank, the affairs of the Dowagiac Manufacturing Company suffered considerably. The stock of C. Eugene Lyle was sold by him at par. The stock held by Frank W. Lyle, which passed to the trustee in bankruptcy, has not been sold by the trustee, and he has had offered for it only 75 cents on the dollar of its par value, and has not been able to obtain a higher price. The court finds, however, that the actual value of the stock of the Dowagiac Manufacturing Company is $75 per share, but that it has no market value, and is not readily salable because the control of the corporation is, by the purchase of the 800 shares formerly owned by said Eugene Lyle, now vested in the hands of Will F. Hoyt and Charles L. Fowle. It is further found that Charles H. Kimmerle, trustee in bankruptcy, in asserting his claim against the stock belonging to the Choate estate, is acting under the advice of counsel, and of the receiver in bankruptcy, but it was not disclosed to the court what were the particulars of his claim. It was, however, conceded by Mr. Gage that Mr. Kimmerle had steadily refused to deliver the stock up, and had constantly asserted a claim to it, and that he, Gage, was not able to deliver it to the administrator *de bonis non* or to turn it over to the court. The stock could have been sold before the failure of the bank for at least $12,500, if reasonable effort had been made."

The conclusions of law are:

"(1) That the appraisement of the stock should be so amended as to read $12,500, instead of $10,000, as its value.

"(2) That Ira B. Gage be charged with the stock at its then present value of $12,500, and that the stock on payment of this amount to his successor, Wilbur G. Bonine, administrator *de bonis non*, should belong to the said Ira B. Gage.

"(3) That the surety of the said Ira B. Gage, as well as the said Ira B. Gage, is holden to the said probate court for the benefit of said estate in the sum of $838.02."

Upon the oral argument much stress was laid upon the finding of the circuit judge that the present value of the

stock was $75 a share.  Mr. Charles E. Lyle, one of the stockholders of the company, was a witness on the part of the administrator *de bonis non*, and testified that, while the company had paid large dividends prior to 1906, it did not pay subsequent to those years.  He testified further:

"*Q.* What do you say as to whether or not the stock was valuable stock in 1906 and 1907 ?

"*A.* The books show the book value, what it was at that time.  In September, 1908, I sold 800 shares of the stock of the company, $20,000 par value, which was 2-5 of the whole, for $20,000, which I thought was the best price I could get for it.  I was tied up in such a manner that I was willing to take it.

"*Q.* Well, what would you say as to whether the Choate stock could be sold now for any more than that price, any more than par ?  Could it be sold for more than its par value ?

"*A.* I think it doubtful."

On the cross-examination he testified:

"Previous to the time I sold my stock in September, 1908, no stock had changed hands for ten years.  Ten years ago there was no sale of stock, but a gift from my mother to me.  I was forced to sell at some price and that is all I could get."

This is the nearest proof of definite value that was offered upon the trial, though the annual reports were put in evidence.  We have already called attention to the stress put in the oral argument upon the fact that the judge had found the stock to be worth $75 a share.  Attention of counsel was called upon the oral argument to the paucity of the record upon the subject of the value of the stock, and counsel was asked as to just what decree he thought the administrator *de bonis non* ought to have, and replied, in substance, he must leave that to the court, but thought it clear his client should either have the stock or its value, and, as his client did not have the stock, he thought it clear he should have a judgment for its value.  In the oral argument the question was put to counsel for Mr.

Gage asking why his client should subject the adminis-
trator *de bonis non* to the trouble and expense of procur-
ing the stock; why he had not taken steps to procure the
stock and bring it into court if he claimed he was entitled
to credit for it. After the oral argument, the trial court
sent an *ex parte* statement to this court, stating, in sub-
stance, that, if the findings purported to state that he
found the stock to be worth $75 a share, the findings were
wrong, as he intended to say, and that was what he
found, the stock, at the time of his finding was worth 75
per cent. of its face value, which would make it $17.50 a
share. Later a petition was filed by Mr. Gage stating, in
substance, that he had procured the stock from Mr. Kim-
merle, and, after notice was given to the parties in inter-
est, an order was made reading in part as follows:

" And said petitioner also stating that he is now able to
bring said stock into court for the administrator *de bonis
non*, and asking leave to be allowed to do this, or to have
the record remanded with leave to do it in the lower court,
and it also appearing that the circuit judge, before whom
this case was heard, had sent to this court an informal re-
turn to the effect that there is a mistake made in the rec-
ord as to what his findings were. It is therefore ordered
that these causes be and they are hereby remanded to the
circuit court for the county of Cass for the purpose of
having the finding and return of the circuit judge cor-
rected, to correspond to his informal return, and that said
Ira B. Gage is allowed the privilege of putting in before
said court proof showing the present status of the stock
above mentioned, and, when this has been done, the cor-
rected return of the circuit judge and his findings that
proof has been offered by said Gage concerning said stock,
together with the proof so offered with respect to said
stock, be returned to this court."

The case was remanded, and upon the hearing a vigor-
ous protest was made by counsel for the administrator *de
bonis non* against anything being done. The court and
counsel seemed to think the order remanding the case was
much broader than this court intended it to be, and in-
stead of simply showing that Mr. Gage had the stock and

was ready to turn it over, and correcting the finding of the circuit judge in accordance with the *ex parte* statement of the court, sent to this court before referred to, the circuit judge made new findings of fact and conclusions of law, which are, in substance, that there was no conversion of the stock, that—

"It was upon the failure to produce the stock and its holdings by the trustee and the peculiar conduct and situation of affairs at that time that I based my conclusion of conversion upon in this case."

He further found that the administrator *de bonis non* should take the stock at $10,000, its present value, and pay Mr. Gage $1,661.98. He was urged to amend his findings so as to make the amount $11,661.98, but declined to do so. Amendments were proposed, overruled, and exceptions duly taken.

It has taken a long time to state the situation, but, when they are sifted out, the facts are comparatively simple. They are substantially as follows: Mr. Choate and Mr. Gage were both copartners in a private bank. Mr. Choate had 400 shares of stock in the Dowagiac Manufacturing Company at the time of his death in February, 1906. He had owned this stock a number of years, and had received dividends upon it. Mr. Gage was named as executor in the will of Mr. Choate, and was duly appointed and entered upon his duties. Because he was executor the stock came to him. It was inventoried and appraised at its par value. It was put into the private box of Mr. Gage in the bank vault of the bank of which Mr. Gage was cashier. The stock then stood and has always stood in the name of Mr. Choate. Mr. Gage was not only made executor of the estate of Mr. Choate, but was appointed guardian of his minor children.

It is not shown that a sale of the stock was necessary to satisfy creditors. It is not shown that Mr. Gage ever attempted to convert it in any way to his own use. When his bank failed, he resigned his position as executor, and attempted to turn over this stock to his successor, but the

trustee in bankruptcy of the bankrupt bank and the bankrupt Mr. Gage declined to turn it over.   Unless the action of this trustee, which was unauthorized and unlawful, charges Mr. Gage with an act of conversion, then he should not be so charged, unless the mere lapse of time should so charge him.   But two years had elapsed between the death of Mr. Choate and the bankruptcy of Mr. Gage.   Evidently Mr. Choate thought the stock was good property to hold for he had held it for years.   The record is barren of any fact being brought to the knowledge of Mr. Gage that should make it his duty as executor to sell this stock which was not listed, and of which none had been sold for a series of years, and turn the proceeds over to himself as guardian.   Section 9430, 3 Comp. Laws, reads as follows :

" An executor or administrator shall not make profit by the increase, nor suffer loss by the decrease or destruction, without his fault, of any part of the personal estate; and he shall account for the excess, when he shall sell any part of the personal estate for more than the appraisal, and if he shall sell any for less than the appraisal, he shall not be responsible for the loss, if it shall appear to be beneficial to the estate to sell it."

This section was before the court in the case of *Loomis* v. *Armstrong*, 63 Mich. 362 (29 N. W. 870), where the court used language which is germane here:

" In doing these things the administrator is required to exercise the ordinary prudence, care, and judgment of men doing the kind of business the deceased was engaged in at the time of his death.   It is not the highest degree of skill or care, nor the best management and judgment, that the law requires.   This would be requiring too much, as will be readily seen, for that would require capacity and ability which would insure success, and is not possessed by more than one-tenth of the persons who engage in business generally.   It is the care, prudence, and judgment which the man of fair average capacity and ability brings to bear in the transaction of his own business that furnishes the standard by which the administrator in the performance of his trust duties must be governed.

" 'The general rule adopted with respect to the liability of executors is founded upon two principles:

" ' (1) That, in order not to deter persons from undertaking these offices, the court is extremely liberal in making every possible allowance, and cautious not to hold executors and administrators liable upon slight grounds.

" ' (2) That care must be taken to guard against an abuse of their trust.' Dayt. Surr. 477; *Tebbs* v. *Carpenter*, 1 Madd. 162."

Many authorities are cited by counsel. Among them are the following which we regard as instructive: *In re Porter Estate*, 5 Misc. Rep. 274 (25 N. Y. Supp. 822); 2 Woerner on Administration, §§ 709, 710; *In re Williamson Estate*, 13 Phila. (Pa.) 195; *Watkins* v. *Stewart*, 78 Va. 111; 1 Perry on Trusts, § 465; *Troup* v. *Rice*, 55 Miss. 278; *Bowker* v. *Pierce*, 130 Mass. 262; *Brinkerhoff-Farris Trust, etc., Co.* v. *Lumber Co.*, 118 Mo. 447 (24 S. W. 129). We think it clear Mr. Gage should have been allowed credit for the stock to the same amount that it was charged against him.

Was the judge wrong in fixing the amount? The probate judge denied credit for the stock, and fixed the balance due at $1,161.98. The circuit judge allowed the credit at $10,000, but still fixed the amount at $1,161.98. It is apparent he failed to add the $10,000 credit, and it should be added.

We cannot understand why Mr. Gage, when he found the trustee would not deliver the stock, did not ask for a postponement of the hearing until he could obtain the stock and tender it. It is very likely, had this been done, much if not all of this litigation would have been saved. Because of his neglect in this respect he should not recover any costs.

Judgment is reversed, and an order may be entered here in accordance with this opinion.

OSTRANDER, C. J., and HOOKER, McALVAY, and BROOKE, JJ., concurred.